## Lacey *v.* Washburn & Williams Co., Appellant.

Argued November 30, 1932. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Thomas Raeburn White,* of *White, Schnader, Maris & Clapp,* with him *Wayland H. Elsbree* and *Kelly, Balentine, Fitzgerald & Kelly,* for appellant.—Decedent's death was not caused by an accident within the meaning of the Workmen's Compensation Act: McCauley v. Woolen Co., 261 Pa. 312; Mauchline v. Ins. Fund, 279 Pa. 524; Gausman v. Pearson, 284 Pa. 348; Lane v. Horn & Hardart Co., 261 Pa. 329; Micale v. Light, 105 Pa. Superior Ct. 399; Gibson v. Kuhn Co., 105 Pa. Superior Ct. 156.

*George Morrow,* for appellee.—There was no evidence from which it can be inferred that decedent foresaw or expected the injury: Lane v. Horn & Hardart Co., 261 Pa. 329.

Death from pneumonia caused by an injury or unusual exertion and exposure is compensable: Broch v. Coal Co., 296 Pa. 502; Jones v. Coal & Iron Co., 285 Pa. 317.

OPINION BY MR. JUSTICE DREW, January 3, 1933:

This appeal was allowed "on the question of defendant's liability for the character of decedent's injury only." The sole question for our determination is, was decedent's death caused by an "accident" within the meaning of the Workmen's Compensation Act of June 2, 1915, P. L. 736? That act provides (section 301) that parties entitled under the statute shall receive "compensation for personal injury to, or for the death of, such employee, by an accident, in the course of his employ-

ment;" personal injury being defined therein as "violence to the physical structure of the body" and diseases resulting therefrom.

Foster T. Lacey, an employee of defendant, Washburn & Williams Company, died March 10, 1928, of pneumonia. Plaintiff, decedent's widow, filed a claim petition alleging that her husband had died as the result of an accident occurring in the course of his employment. The case was referred to a referee, who found that decedent came to his death as the result of pneumonia contracted while working for defendant in the refrigerating room of Williams Ice Cream Company, one of defendant's customers, and made an award allowing compensation. Defendant appealed, and the compensation board sustained the appeal and set aside the award. Plaintiff then appealed to the Court of Common Pleas of Lackawanna County, and that court reversed the action of the compensation board and reinstated the award of the referee and entered judgment thereon. Defendant next prosecuted an appeal to the Superior Court, where, by a bare majority, the judgment was affirmed, whereupon, on defendant's petition, an appeal was allowed by this court.

The question raised is a close one, and is fundamental, as the facts and law of the case will show. Lacey was employed as a carpenter by defendant. The referee found that on February 25, 1928, he spent about an hour in the refrigerating or "hardening" room of the Williams Ice Cream Company, making measurements for carpenter work, where the temperature was from 10 to 20 degrees below zero; that he suffered a chill, went home, and developed pneumonia, which caused his death.

It must be admitted that Lacey died from pneumonia contracted "in the course of his employment." It may also be conceded that the injury which caused his death did violence to the physical structure of his body. It is not necessary that there be a battery in order to produce

a violent change in the human organism. A virulent germ is often much more destructive than a heavy blow. These requirements of the Compensation Act are present and accounted for, but the question remains, was there an accident within the meaning of that act? The employer is not an insurer of the life and health of his employee; his liability for compensation is found only in the terms of that statute.

The word accident—as used in the act—must be interpreted in its usual, ordinary, popular sense. Webster has defined it as "an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance; contingency." Many courts have quoted this definition, and some have added to or embellished it, but in reality few have improved upon it. It would answer no good purpose to call attention to the many immaterial variations and additions. Our decisions interpreting the word as used in our compensation law have substantially clung to this meaning. In McCauley v. Imperial Woolen Co., 261 Pa. 312, 327, we said: "If the incident which gives rise to the injurious results complained of can be classed properly as a 'mishap,' or 'fortuitous' happening—an 'untoward event, which is not expected or designed'—it is an accident within the meaning of the Workmen's Compensation Law." In Mauchline v. State Ins. Fund, 279 Pa. 524, 526, we said: "To be an accident, within the Workmen's Compensation Law, the injury must usually result from some undesigned event occurring at a particular time." In Gausman v. Pearson, 284 Pa. 348, 354, we said: "To constitute an accident there must be some untoward occurrence aside from the usual course of events." In Lane v. Horn & Hardart Baking Co., 261 Pa. 329, 333, we said: "Wherever death is mentioned in the statute, it means death resulting only from unforeseen violence to the physical structure of the body and its resultant effects......or, in other words, death from 'an accident.' "

Death is brought about in an infinite number of ways. Our Workmen's Compensation Act has limited liability to a fraction of that infinite number. It is, therefore, absolutely indispensable that the important words and clauses of that statute be interpreted without ambiguity. It is further essential, in deciding the multitude of border line cases, first to determine definitely the real meaning of the word "accident" as used in the act and the general principles by which its interpretation must be governed, and then to reason closely in order to apply clearly those principles. That which distinguishes an accident from other events is the element of being unforeseen; an accident is an occurrence which proceeds from an unknown cause, or which is an unusual effect of a known cause, and hence unexpected and unforeseen. The death of an employee, unless it is the result of some untoward happening, not expected or designed, a mishap or fortuitous happening, aside from the usual course of events, is not compensable under our statute. An examination of the decisions of this court and of our Superior Court, dealing with situations similar to that now before us, brings out clearly the distinction between compensable and noncompensable deaths; it will be found that in all cases where compensation was awarded some "untoward occurrence," some "unforeseeable mishap," was the operative cause of the employee's death, while in those cases in which compensation was denied, no such unusual happening occurred. Thus, compensation was allowed where the superinducing cause of pneumonia was a strain incurred in lifting a heavy object (Wolford v. Geisel Moving & Storage Co., 262 Pa. 454; Zagwisky v. Lehigh Valley Coal Co., 295 Pa. 71); where the accident which set in motion the forces leading to the employee's death was an electric shock (Murdock v. N. Y. News Bureau, 263 Pa. 502; Lupfer v. Baldwin Locomotive Works, 269 Pa. 275); where the pneumonia of which the employee died was the consequence of a blow or fall (Dumbluskey v. Phila. &

R. Coal & Iron Co., 270 Pa. 22; Dopkin v. Phila. & R. Coal & Iron Co., 296 Pa. 71; Borovski v. Phila. & R. Coal & Iron Co., 101 Pa. Superior Ct. 304); where pneumonia was the result of a wetting received in helping a fellow employee buried by the slide of a culm bank (Jones v. Phila. & R. Coal & Iron Co., 285 Pa. 317); where the employee, whose clothes had become wet while he was at work, was forced to stand in a drafty place for over an hour because of an accident to the car which was to take him out of the mine, and as a result contracted pneumonia, from which he died (Broch v. Lehigh Valley Coal Co., 296 Pa. 502); and where pneumonia resulted from a wetting caused by the presence of unusually large quantities of water in the mine where decedent worked (Boyle v. Phila. & R. Coal & Iron Co., 99 Pa. Superior Ct. 178; Senlock v. Phila. & R. Coal & Iron Co., 104 Pa. Superior Ct. 156). On the other hand, in Gibson v. Kuhn, 105 Pa. Superior Ct. 264, in which we refused to allow an appeal, compensation was denied claimant for the death of her husband, resulting from pneumonia which followed a wetting received by him while assisting a carpenter in repairing a roof. It was held that there was no accidental exposure, that there was no element of "accident" in the case, and that getting wet by rain and taking a chill was a not unusual result of working out of doors. Likewise, in Micale v. Light, 105 Pa. Superior Ct. 399, where a miner had worked in a wet place in a mine for more than a month, the fact that he suffered a chill, which brought on his death, did not entitle his widow to compensation, inasmuch as the chill was the result of usual and ordinary conditions under which he worked. To the same effect are Landers v. Muskegon, 196 Mich. 750; Lerner v. Rump Bros., 241 N. Y. 153; D'Oliveri v. Austin, Nichols & Co., 211 N. Y. App. Div. 295.

The same distinction is very clearly illustrated by two cases decided in the House of Lords on appeal from the Court of Session of Scotland, in which the facts were

very similar to those in our cases of Broch v. Lehigh Valley Coal Co., supra, and Micale v. Light, supra, and in which the same conclusions were reached. In Coyle v. Watson, [1915] A. C. 1, where, because of a wreck in a mine shaft, a miner was kept waiting at another shaft exposed to a cold current of air which ventilated the mine, and as a result of such exposure caught a chill which brought on pneumonia, from which he died, it was held that his death was an injury by accident arising out of and in the course of his employment. In Lyons v. Woodilee Coal & Coke Co., 86 L. J. P. C. 137, where a miner came to the bottom of a shaft at the end of his shift to be taken to the surface, and was there exposed to a cold current of air passing through the pit bottom from the ventilating shaft, and as a result of such exposure received a chill resulting in pneumonia, which caused his death, it was held that while his death arose out of and in the course of his employment, yet there could be no compensation because the referee properly held it did not result from an accident—"something unlooked for, some mishap, or untoward event which was not expected or designed." The distinction between these two cases rests upon the fact that in the Coyle Case the exposure to a cold current of air was not expected, intended, or designed, while in the Lyons Case the exposure was intended and designed.

The rule deducible from our decisions limits the right to recover compensation to cases where injury or death is due to some unexpected or fortuitous event. From what has been said, we think it can readily be understood that the exposure which caused the death in the instant case was not an accident—as that word is used in our Compensation Act. The chill from which the death resulted, contracted while working for an hour in a refrigerator where the temperature was from 10 to 20 degrees below zero, was not the consequence of a sudden and unexpected event which took place without expectation, a mere chance or contingency. It was not the

result of an untoward occurrence, not expected or designed, a mishap or fortuitous happening, aside from the usual course of events. Quite the contrary, it was a natural and usual consequence of his entering and remaining so long in such a place. From the foregoing, it is obvious that the judgment entered below must be reversed.

The judgment of the Superior Court is reversed, and the order of the workmen's compensation board disallowing compensation is reinstated and affirmed.

Mr. Justice MAXEY dissents and would affirm the judgment of the Superior Court.