McFadden *v.* Lehigh Navigation Coal Co., Appellant.

Argued December 11, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*George R. Kaercher,* and with him *R. S. Riordan* and *William Jay Turner,* for appellant.

*Roger J. Dever,* for appellee.

OPINION BY PARKER, J., February 1, 1934:

Anna McFadden, widow, claims compensation from defendant for the death of her husband. The main question involved is whether decedent's death was caused by an "accident" as that term is used in the Workmen's Compensation Act of 1915 (77 PS 1), and an answer thereto is decisive of the controversy.

John McFadden, an employee of defendant, Lehigh Navigation Coal Company, died on the afternoon of November 17, 1931, aged about 59 years. On that day, when decedent and his buddy arrived at their place of employment about 7 a. m., they each obtained a stick of timber. The buddy proceeded with a stick five and one-half feet in length and seven inches in thickness, followed by decedent with a stick six feet long and seven inches thick at the larger end. Their task was to drag the stick of timber up a rock chute which arose at an angle of forty degrees a distance of fifty-five feet, then east twenty-three feet on the level, and finally up a chute inclined at an angle of thirty-four degrees. The employees were provided with a steel "dog," and in performing their labor would stand with the timber between the feet, stoop, and with the steel "dog" pull or drag it along. The buddy had progressed with his timber a distance of eighty-three feet and decedent following him had proceeded about thirty-three feet when the buddy looked down and saw the decedent lying with his timber at the point mentioned. The deceased was taken to a hospital where he was found to be suffering with a cerebral hemor-

rhage, from which cause he died on the same day. These two employees were engaged at their usual work. Each day for several years it had been the task of decedent to take up this chute from one to three timbers of the same kind. There was not any evidence that the decedent on the day of his death did anything else than his usual work and that to which he had been accustomed for a long period of time. Neither is there any evidence from which it may be inferred that he slipped, fell, or had any other mishap. The only physician called stated that in his professional opinion the exertion in moving the stick was a marked contributory factor in the man's death from apoplexy which might have been caused by a thrombus, an embolus, or a hemorrhage, but that it might have occurred while he was asleep. There was not any autopsy held, but the physician called was surgeon-in-chief of the hospital at which decedent died.

"Disability, overtaking an employee at his work, is not compensable unless the result of accident. And the burden is on claimant to prove it was such and not from natural causes ...... True, Dr. Frederick attributed the exhaustion, or stroke, to claimant's exertion in the performance of his work and expressed the opinion that but for the work it would not have happened at that time; in other words that the disability was hastened by the work; even so, that alone would not constitute an accident; otherwise it would be unsafe to give employment to anyone advanced in years. Disability, hastened by such exercise, cannot be treated as accidental; neither can death or disability overtaking an employee in the course of his employment and resulting from a natural cause; if it could, it would render the employer an insurer of the life and health of the employee": Gausman v. Pearson Co., 284 Pa. 348, 354, 131 A. 247. In the recent case of Lacey v. Washburn & Williams Co., 309 Pa. 574, 580, 164 A. 724, after a full consideration of the

decided cases dealing with the meaning of the word "accident," it was said: "The rule deducible from our decisions limits the right to recover compensation to cases where injury or death is due to some unexpected or fortuitous event."

The record is barren of any evidence showing, or from which may be inferred, "any undesigned, unforeseen, sudden or unexpected occurrence, any mishap, untoward or fortuitous event, outside of the usual course of things." In short, there is no evidence of an "accident" within the meaning of our compensation act. The employee was performing precisely the same kind of labor, true it was hard labor, as had been done by him for a number of years. Insofar as the record discloses, he did not slip or suffer any other mishap but died suddenly from the bursting of a blood vessel in the brain.

But the compensation authorities, the lower court, and the appellee urge that the doing of hard labor constitutes an accident, and in support of that contention refer to decisions of the appellate courts holding that over-exertion during the course of employment may be an accident within the meaning of the Workmen's Compensation Law. They, in effect, contend that in any case where one performs hard labor, and in the course of his employment is overtaken with a heart strain or apoplexy and dies, the case is compensable. We will examine these contentions in order. Arguing on principle, our first conclusion is that hard labor, when labor of the same kind and intensity has been regularly and usually performed by the employee, is not of itself an accident. If the law is as contended by appellee, a hod carrier called upon to carry a heavy load up a succession of ladders, or a woodsman felling trees, or a blacksmith or his helper hammering iron, although he has done the same work for years, if stricken with a heart strain or apoplexy while so engaged and dies, would be entitled to compensation. This would

lose sight entirely of the fact that there must be an accident as the basis of compensation. The hod carrier, woodsman, or blacksmith would be doing precisely the same kind of labor he had performed for a lifetime. Surely no one could contend that the performance of this labor would constitute an unexpected or fortuitous, untoward or unusual event.

On referring to the decided cases we find that over-exertion during the course of employment under certain varying circumstances has been held to be an accident within the meaning of the Workmen's Compensation Law, and consequently that death brought about by such cause is compensable: Tracey v. P. & R. C. & I. Co., 270 Pa. 65, 112 A. 740; Honis v. Coxe Bros. & Co., 95 Pa. Superior Ct. 209; Samoskie v. P. & R. C. & I. Co., 280 Pa. 203, 124 A. 471; Kotkoskie v. N. M. & E. Co., 105 Pa. Superior Ct. 480, 161 A. 480. An examination of the cases, however, will show in each case where compensation was allowed there were facts showing something fortuitous or unexpected. In Watkins v. Pittsburgh Coal Co., 278 Pa. 463, 123 A. 461, principally relied upon by the appellee, the decedent was called upon each day to climb a large number of stairs. His dead body, marked by bruises and a cut, was found near the foot of twelve steps. No one saw the accident. While the court refers to the fact that an extra strain was placed upon his heart by the daily routine of his work, there was clear and precise evidence of an accident. In summing up the matter the court said (p. 466): "It clearly appears the deceased sustained a fall, and this may have caused death by a brain lesion or some other injury; so, in addition to the question of heart strain, the circumstances tend to support the finding of an accidental death." In the case of Tracey v. P. & R. C. & I. Co., supra, a repair man in a colliery was engaged with other workmen in taking a buggy or car up the breast in defendant's mine. It resulted in a sprained back followed by cardiac col-

lapse, resulting in death. There is not anything to indicate whether this was part of his regular labors or an unusual occurrence. The facts would seem to indicate that it was unusual. We have been unable to find any case involving heart strain or apoplexy where it has been held that the doing of the regular labor usually performed by the employee, even though hard labor, is an unexpected or fortuitous event.

On the other hand, there are a number of cases, in addition to that of Gausman v. Pearson Co., supra, which inferentially support our conclusion. In Diriscavage v. Penna. Coal Co., 96 Pa. Superior Ct. 189, the decedent, a miner, while engaged in operating a drilling machine was stricken with apoplexy. The physician testified that the operating of the auger in drilling the hole was a material contributory factor in causing the break in decedent's weakened arteries and bringing on the apoplexy which was the cause of death. Claimant was not permitted to recover for the reason that there was not any evidence that he was doing any other than the usual labor performed by him. In Honis v. Coxe Bros. & Co., supra, we said (p. 212): "There is enough in the case to support the inference that the effort to dislodge this rock was not the usual kind of work which the decedent was engaged in and the physical strain involved in the work was not usual and therefore supported the conclusion of the workmen's compensation board that the 'effort to dislodge the rock was an unexpected and untoward happening.'"

There is also a line of cases where there has been direct evidence of violence to the physical structure of the body other than such as is immediately connected with a predisposing cause of death, and in which compensation has been allowed. In Murray v. Brown, 107 Pa. Superior Ct. 516, 164 A. 138, death was caused by an acute attack of appendicitis. In addition to a chronic condition of

the appendix which might have been a predisposing cause of an attack, there was evidence of a tearing of adhesions which were about the appendix and that this precipitated the acute attack. In Betts v. American Stores Co., 105 Pa. Superior Ct. 452, 161 A. 589, the employee had been suffering from arthritis. His incapacity resulted from that disease and he was allowed to recover. There was evidence, however, that while performing certain of his labors in an unusual way, he stooped in such a manner as to injure the processes between the vertebrae of his back. Such cases presented a different situation than in the instant case as in each there was not only a mishap but there was evidence of injury aside from the chronic condition. Any confusion that may seem to exist in the decided cases is due to a too literal interpretation of the meaning of the word "over-exertion" as used by the courts. While light exercise might be sufficient to aggravate an existing condition, yet under the cases to which we have referred it is not alone sufficient to sustain an award of compensation. At the same time, such exertion, although light, might in the broadest sense of the word be referred to as an over-exertion. Over-exertion is to be taken in a limited sense and as used in the cases referred to does not include such exertion as has been usually performed by the particular employee as a part of his labors.

The board found as a fact that the work being done by decedent was hard labor, and that is the fair inference from the facts. One witness testified on that subject as follows: "Q. Was this hard work, make you puff? A. We weren't going so fast. It was hard work. Q. Walking up a pitch of thirty or forty degrees ninety feet, that is pretty hard work in itself? A. Yes, but when you are used to it it is not so bad."

There is not any evidence in this record which will support the conclusion that the decedent in this case suffered an accident. Our conclusion is that where

an employee while in the course of his employment, is performing hard labor, but of the same kind and in the same manner as he had been doing it for several years, and while so engaged is stricken with apoplexy and dies suddenly from a cerebral hemorrhage, the performance of such hard labor is not of itself over-exertion as that word is used in our cases, and is not an accident as that term is used in the Workmen's Compensation Law.

The judgment of the lower court is reversed and here entered for the defendant.