Swiderski, Appellant, *v.* Glen Alden Coal Co.

22

Argued March 7, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*H. C. McGrath,* and with him *Welles, Mumford & Stark,* for appellant.

*J. H. Oliver,* and with him *Franklin B. Gelder,* for appellee.

OPINION BY CUNNINGHAM, J., July 13, 1934:

On February 15, 1932, Stephen Swiderski, husband of the claimant in this compensation case, died in the course of his employment as a laborer in one of the mines of Glen Alden Coal Company. No claim for compensation seems to have been made until September 3, 1932, when his widow filed her petition for compensation upon the ground that her husband's death

had resulted from violence to the physical structure of his body, accidentally suffered in the course of his employment. The employer answered that his death had not been caused by any "accident," within the meaning of Section 301 of the Workmen's Compensation Act of June 2, 1915, P. L. 736.

The referee, after hearing the evidence of both parties, disallowed compensation upon the ground that "claimant failed to prove that her husband died as a result of an accident." Upon her appeal, the Board set aside the controlling findings of the referee, substituted its own, and, being of opinion there was sufficient competent testimony that the employe's death was due to an accident, made an award. The employer thereupon appealed to the court below and that tribunal sustained its exceptions to the findings of the Board, set aside the award, and entered judgment for the employer; from that judgment we now have this appeal by claimant.

The only question involved is whether appellant met the burden of showing, by sufficient competent evidence, that her husband's death resulted from an accident in the course of his employment. There is no dispute concerning the circumstances surrounding his death; the difficulty arises when we attempt to apply the law to those circumstances to the end that the proper inference may be drawn from them.

Anthony Chludynski, the miner with whom decedent worked, was the only witness to the occurrence. Excerpts from his testimony read: "Q. How long previous to February 15, 1932, did you know Steve Swiderski?......A. I know him from small kids. Me and him grow together......Q. Did he work every day that the mines worked? A. Yes. ...... Q. What work was Steve doing?......A. Standing props. Q. What else was he doing?......A. Just when he make the change for the prop I got to do that job and that

prop, see, he get hold one end and I get hold of mine. We throw that prop [4½ ft. long, 11 in. thick and weighing 212 lbs.] on the [gob, 2½ ft. high], see, and after get ready to set the prop he step on it and get hold of saw to cut him and he say 'something matter with my back' and right away he lay down and no move no more......Q. Go on. Anything else? A. After he say for the back hurt he no move no more. Q. What did you do then? A. He lay down for couple of minutes and I ask Steve 'How you feel?' He says 'Rotten. My back sore.' After he look funny to me and I take him to section foreman......Q. Tell us just what happened after he threw the prop? A. Threw the prop and after about two steps I get prop ready to saw and after Steve step on about two steps and get hold of handle to saw about two or three times and he say then right away 'something the matter with me, my back.' ''

Considering the testimony of this witness as a whole, we agree with the following statement of its substance, as contained in the opinion of LEWIS, J.: ''They were getting ready to stand a prop to support the roof and Swiderski cleaned away a place and made a hole for the prop to stand in. Sometime later Chludynski and Swiderski lifted the prop and threw it on the side of the place. Chludynski was on one end of the prop and Swiderski was on the other end. After throwing the prop on the side of the place Swiderski took a few steps, got hold of the handle of the saw and started to saw the prop, and complained of his back.''

A few minutes after the occurrence the witness assisted Swiderski to walk to the office of the mine foreman, and then to the mine carriage, requiring about thirty-five minutes; he was then taken to the blacksmith's shop on the surface where it was observed he was shaking (as if cold) and had difficulty in

breathing. Another witness testified Swiderski "sort of put his hand behind his back and sort of groaned and then he sort of put his head up and I saw his eyes rolling over and he dropped down"; death occurred while he was being taken to the hospital.

Thus far it is clear, in so far as externals are concerned, there is no evidence of the happening of any such unexpected and unforeseen occurrence, mishap or untoward event, as would constitute an accident within the meaning of the statute, as interpreted by our Supreme Court in Lacey v. Washburn and Williams Co. 309 Pa. 574, 164 A. 724. There is no more evidence of any "accident" in this case than was present in Diriscavage v. Penna. Coal Co. 96 Pa. Superior Ct. 189; O'Neill v. Lehigh Coal and Navigation Co. 108 Pa. Superior Ct. 425, 165 A. 60; Pelusi v. Mandes, 109 Pa. Superior Ct. 439, 167 A. 456; Waleski v. Susquehanna Collieries Co. 108 Pa. Superior Ct. 342, 164 A. 355; Mooney v. Yeagle et al. 107 Pa. Superior Ct. 409, 164 A. 82; Weissman v. Phila. Electric Co. 111 Pa. Superior Ct. 353, 170 A. 318; and Kincel v. Ferraco Const. Co. et al., 113 Pa. Superior Ct. 61, 172 A. 11.

The fourth finding of fact of the Board reads: "The work being done by decedent immediately prior to his complaining was such as to require *unusual physical exertion* and make possible a strain or injury." There is no evidence to support this finding. The strongest legitimate inference that can be drawn from the evidence is that this employe was engaged in performing the kind of labor he was accustomed to perform; it was hard labor but there is no evidence that anything occurred requiring "unusual physical exertion" upon his part. "Over-exertion," as a basis for an award of compensation, has been recently considered in the case of McFadden v. Lehigh Navigation Coal Co. 111 Pa. Superior Ct. 501, 170 A. 314. In that case, PARKER,

J., speaking for this court, analyzed and classified the cases and pointed out that where compensation has been allowed there were facts present showing something fortuitous or unexpected; that the expression is to be taken in a limited sense; and that it does not include such exertion as is usual in the performance of the labor in which the employe is engaged.

As stated by the court below, the theory upon which the award was made seems to be that "something occurred which is not disclosed that caused the death of the decedent." Appellant's contention, as we understand it, is that there was a rupture of some organ, an occurrence which, in and of itself, constituted an accident, and brings the case at bar within the line of cases of which Keck v. John Mullen Construction Company et al., 113 Pa. Superior Ct. 564, 173 A. 863, is an example. In that case, there was conclusive evidence that the employe had ulcers of the stomach; after lowering two heavy channel irons, by a rope held in his hands, he suddenly collapsed; death followed an operation. The operation disclosed "a perforated ulcer about the size of a silver dollar with a slit in its center about one-half inch long" and there was positive expert testimony that the perforation resulted from "excessive strain upon the abdominal muscles." Referring to this state of facts, it was said: "Where, as in this case, there is proof of violence to the physical structure of the body which causes disability or death, that of itself is an accident unless the break, strain, rupture, or the like is but an element in the natural progress of the disease, occasioned or hastened by the labors regularly performed in one's usual employment."

The difficulty here is that the evidence in behalf of appellant falls far short of the proofs in the Keck case. She attempted to support her claim by the evidence of two physicians.

Dr. Robert Flynn, the employe's family physician, testified he had treated Swiderski on February 3, 1932, twelve days before the incident, for pains in his chest and back and found, upon examination, that he had a slight bronchitis and a cough but that his heart, lungs, and blood pressure were normal. This witness frankly stated he could not say "what he died of"—could only "surmise." His strongest expression as to a possible cause of the employe's death, reads: "After examining the man and found no evidence of a condition which was apt to cause death all I can say is I would say he died from some acute condition which *might have been perhaps* a ruptured blood vessel from the strain, or perhaps a rupture of the air spaces in the lung. I would rule out the heart on the fact that I didn't find any condition which would be apt to cause heart trouble. Other than that I could not testify as to what caused his death. The referee: Q. Those are surmises on your part are they? A. Yes."

Dr. P. J. McDonnell, who had neither seen Swiderski in life nor examined his remains but had heard the evidence submitted to the referee, stated he believed the employe "ruptured his pleura and that gave him or he developed pneumothorax," which he thus described: "There is a hole in your lung and that might close up but if he kept on exerting himself forcing the air out and squeezing the heart over on the other side and suffocating himself. Pain happens wherever the rupture is and the pain was in the back." The witness used the general expressions that in his opinion the employe "did something violent to himself ...... tore something ...... died from some accident" but "no one could say" what had actually occurred. To the specific inquiry, "But you cannot tell us what condition caused his death," this witness replied, "I can't say."

The unfortunate lack of such evidence as might have

brought this case within the principles stated in the Keck case is largely due to the refusal of appellant to permit the physicians at the hospital to make a post mortem examination. When asked why she refused, her reply was, "It was not necessary to have a post mortem. Our people don't do it. Why should I when he died of pneumonia? I thought he died in the mines and I thought there was no use having it."

Of course, we attach no importance to her statement that her husband died of pneumonia, nor do we find fault with her refusal to permit an autopsy. That was a matter for her, but if by so doing she has prevented the obtaining of evidence which might have supported her claim, the responsibility must rest with her. (Carroll v. Willow Brook Co., 108 Pa. Superior Ct. 580, 165 A. 550.)

We think the testimony here does not come up to the established standard of proof. Appellant's experts say death "might have been" caused by "a ruptured blood vessel from the strain, or perhaps a rupture of the air spaces in the lung" or "a ruptured pleura;" neither of them undertakes to say that in his professional opinion it resulted from the rupture of a designated organ. No marks were found upon the body—a matter which distinguishes this case from that of Zelazny v. Seneca Coal Mining Co. 275 Pa. 397, 119 A. 487, cited by the board. After considering all the medical testimony, a finder of facts could do little more than guess at the cause of death.

No purpose would be served by discussing the cases cited in the able and comprehensive brief of counsel for appellant. Many of them were prior to Lacey v. Washburn and Williams Co., supra, and others are distinguishable upon their facts.

Under the issue here, appellant had the burden of showing by sufficient competent evidence that her husband's death resulted either from such unexpected or

fortuitous objective happenings as would amount to an accident within the intendment of the statute, or from such actual violence—in the nature of a strain, rupture or the like, as contrasted with the natural progress of a disease—to some particular organ or organs as may properly be considered an accident, in itself.

A majority of the members of this court are of opinion that there was no proof of the former and insufficient evidence of the latter.

Judgment affirmed.