Opinion by
 

 Parker, J.,
 

 The only question presented by this appeal is whether there is sufficient evidence in the record to support a finding by a workmen’s compensation board that claimant’s decedent died as the result of an accident as that expression is used in the compensation law.
 

 The board reversed a finding of a referee holding that death was not due to an accident and made an award. On appeal to a court of common pleas the award was affirmed and judgment was entered for the claimant.
 

 “Disability, overtaking an employee at his work, is not compensable unless the result of accident. And the burden is on claimant to prove it was such and not from natural causes......True, Dr. Frederick attributed the exhaustion, or stroke, to claimant’s exertion in the performance of his work and expressed the opinion that but for the Avork it would not have happened at that time; in other words that the disability was hastened by the work; even so, that alone Avould not constitute an accident; otherwise it would be unsafe to give employment to anyone advanced in years. Disability, hastened by such' exercise, cannot be treated as accidental; neither can death or disability overtaking an employee in the course of his employment and resulting from a natural cause; if it could, it would render the employer an insurer of the life and health of the employee”:
 
 Gausman v. Pearson Co.,
 
 284 Pa. 348, 354, 131 A. 247.
 

 Joseph Amentlar had been an employee of the defendant for some time prior to April 8, 1933, the date when he became incapacitated for work. While he had been employed as a miner at a stripping operation, he had been engaged for three weeks in the construction of a loading platform, a facility used at the operation in which he was engaged. Amentlar and other employees had frequently engaged in this kind of construction work. On April 8th the decedent, shortly after
 
 *100
 
 7 A.M. when he arrived at his work, was seen dragging a forepole to the platform from a point three hundred feet distant. The course over which it was dragged “was a little rough.” The pole was variously estimated at from fourteen to twenty feet in length, six or eight inches in diameter at the larger end, four inches at the smaller end, and about ninety to one hundred fifteen pounds in weight. A witness for the defendant, the only person who actually measured the pole, testified that it was fourteen feet in length, six inches in diameter at one end and four inches at the other end.
 

 Fifteen or twenty minutes after the employee was seen dragging the pole he was found sitting on the platform in a semi-conscious condition. There was an axe at his side and evidence of some nicks having been chipped in the pole. He was taken from his work to a hospital where he died five days later. A postmortem examination was performed and it was shown that he “died from a hemorrhage of the brain in the left cortical area” and that he “had definite arteriosclerosis but it was of a minor degree.” In answer to a hypothetical question a physician called by the claimant testified as follows: “It is my opinion undue exertion caused the rupture of the blood vessel which in turn caused the man’s death.” On cross-examination he stated that the exertion accelerated his death and was a contributory factor and that he was “likely to die” at any time. A physician called by the defendant stated an opposite conclusion.
 

 The board made, inter alia, the following findings: “The lay testimony shows that the work performed by the decedent immediately prior to the time he was found stricken on the platform was not the regular work of said decedent as a miner; and that the kind of work he was doing required undue exertion on the part of decedent. The medical testimony shows that undue exertion caused the rupture of the blood vessel, which in
 
 *101
 
 turn caused the decedent’s death. The decedent was injured by an accident in the course of his employment with the defendant.”
 

 There was not any evidence at any point in the record showing that on the morning in question Amentlar did any different kind of work or labor than he had been doing for three weeks or performed other than the same kind of labor that was customarily performed by his fellow miners. Not only so, but we find no evidence of unusual exertion. We have here a coal miner dragging on the ground for a distance of three hundred feet a pole fourteen to eighteen feet long, which weighed at most only one hundred fifteen pounds. There is nothing to indicate that at any time he bore the whole weight as he apparently pulled it along by hand. For one accustomed to dig and shovel coal to perform a task of the kind in which this employee was engaged on the morning of the occurrence would not seem to require great labor. At least, there is not any evidence of unusual exertion. The only support the board furnished for the ultimate finding was that the employee was not engaged in “the regular work of said decedent as a miner.” True, he was not actually mining coal at the time, but for three weeks he¡ had been doing this very work, as had claimant’s witnesses, Christey and Kovenko, fellow employees of decedent. It was not shown that there was “any sudden unlooked for occurrence in the course of his [Amentlar’s] work calling for any extra exertion or strain other than that required by his usual and ordinary labor for the day”:
 
 Lesko v. Lehigh Valley Coal Co.,
 
 270 Pa. 15, 17, 112 A. 768.
 

 As the employee was doing the same kind of work that he had been engaged in for a considerable period and doing it in the usual manner, the case is ruled by
 
 McFadden v. Lehigh Nav. Coal Co.,
 
 111 Pa. Superior Ct. 501, 170 A. 314;
 
 Rocco v. Ellsworth Collieries Co., 111
 
 Pa. Superior Ct. 508, 170 A. 316;
 
 Swiderski v. Glen
 
 
 *102
 

 Alden Coal Co.,
 
 114 Pa. Superior Ct. 21, 173 A. 865;
 
 Whitecavage v. P. & R. C. & I. Co.,
 
 116 Pa. Superior Ct. 540, 176 A. 757.
 

 It is most apparent that in so far as “external” happenings are concerned there was no evidence of any “untoward occurrence, not expected or designed, a mishap or fortuitous happening, aside from the usual course of events” as described by our Supreme Court in
 
 Lacey v. Washburn & Williams Co.,
 
 309 Pa. 574, 581, 164 A. 724.
 

 An accident may occur to an employee when he is performing his usual work. When an injury arises from an external cause it is not usually difficult to determine whether the causal happening is an accident. But a mishap or fortuitous happening may be confined to a location which is not external and be unaffected by matters occurring outside the body. As we pointed out in
 
 Betts v. Amer. Stores Co.,
 
 105 Pa. Superior Ct. 452, 457, 161 A. 589, one walking on a smooth pavement may turn his ankle or his knee may give way in such a manner as to result in serious injury and yet we would not hesitate to say there had been an accident. Such mishaps also occur in those portions of the anatomy of the body that are not exposed to view and they are not fully understood by a layman. In such cases we do not have a view of the bones, muscles and tissues and the accident must be inferred from the condition of a part of the body or the manner in which it functions taken with the circumstances.
 

 We have in several cases sustained a finding of accidental injury under just such conditions. In the Betts case, supra, the employee, while carrying a load on his shoulders, had the mishap of stooping in such a manner as to pinch the nerve tissues between two vertebrae. The chance pinching was held to be just as much a mishap or accident as the turning of an ankle. In
 
 Keck v. John Mullen Const. Co.,
 
 113 Pa. Superior Ct. 564, 173
 
 *103
 
 A. 863, the employee while in a strained position was letting down a heavy channel iron, thereby placing a severe strain on the abdominal muscles in such a way that an ulcer was perforated. The breach, when examined, showed a cut such as would be made by a knife, thereby furnishing evidence of an accident and excluding the natural progress of an existing disease as the sole cause of the injury. In
 
 Cowell v. F. W. Woolworth Co.,
 
 119 Pa. Superior Ct. 185, 180 A. 752, an employee while moving a basket twisted her arm in such a way as to cause a disability and we sustained an award.
 

 The facts in the case we are considering, as in the Betts and Keck cases, disclosed an existing disease as a possible cause of death. That further complicates the situation and makes a satisfactory deduction more difficult for it is necessary to find that there was an accidental cause which has contributed to the disability or death and that the disease was not the sole cause.
 

 Here Amentlar was suffering from a progressive disease which was shown by claimant’s own witnesses to be a possible cause of death at any time. This excludes that line of cases where one in good health is suddenly incapacitated and from the circumstances an accidental cause may be inferred. While claimant’s doctor testified that the exertion was a contributing cause of death, such fact, if accepted, was not sufficient to support the claim. As we pointed out at the outset, the compensation law does not cover all injuries resulting to an employee while in the course of his employment ; he must prove that there was at least a contributory and accidental cause. The claimant is left without any support in the record for her claim that the injury was due to an accident, since there is not any evidence that her decedent was performing any unusual work or in fact any other kind of work than he performed regularly or that he was doing it in an unusual manner. There was no evidence from which an acci
 
 *104
 
 dent might be inferred and no external and unusual happening. The claim cannot be sustained for the primary reason that there was no evidence of an accident and the burden of proof was on claimant.
 

 Judgment of the court below is reversed and it is directed that judgment be entered for the defendant.