Minner *v.* Reno (et al., Appellant).

Argued October 25, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Harry J. Nesbit,* with him *Thomas V. Mansell,* for appellant.

*Robert L. Wallace,* for appellee.

OPINION BY BALDRIGE, J., December 13, 1939:

The widow of Mont Minner filed a claim for compensation, alleging that her husband in the course of his employment sustained an accidental injury within the provision of section 301 of the Workmen's Compensation Act approved June 2, 1915, P. L. 736 (77 PS §411), which resulted in his death. The compensation authorities granted an award, which was affirmed by the court below. "While the Board's findings of fact when supported by competent evidence are binding and cannot be disturbed, nevertheless the question whether or not there is evidence to support a particular finding is one of law and may be reviewed on appeal": *Monahan v. Seeds & Durham et al.,* 336 Pa. 67, 74, 6 A. 2d 889.

Turning to the facts, we find that deceased was employed by the defendant on November 4, 1936, as a truck driver, whose duties consisted of collecting milk from farmers. Between the hours of 9:30 and 10 o'clock on the night of December 21, 1936, the deceased, accompanied by another employee, went to the Watson farm where the milk cans were in the springhouse standing in a water vat or trough, 18 inches deep, where they were placed to keep the milk from freezing, owing to the extreme cold weather, instead of on the public road, which was the usual practice, although, according to the testimony of Mr. Watson, the three previous nights the deceased had taken the cans from

the water in the springhouse. On the night in question the top of each can was a little lower than the floor on which deceased stood and immediately after lifting from the water an ordinary sized can, containing 5 gallons of milk and weighing approximately 55 pounds, he was taken violently ill. After receiving first-aid treatment at this farm, he proceeded in his truck to the next customer, where he appeared to be in great agony. He was then taken home, arriving there between 12 and 12:30. Dr. Nader was summoned and had him immediately removed to the hospital where early the following morning Dr. Shoaff performed an operation which disclosed the patient was suffering from a perforated gastric ulcer and general peritonitis. Death followed December 25, 1936.

The widow testified that for a considerable period of time her husband had been having stomach trouble, but not of a serious character, which she attributed to indigestion. He had eaten his noon day meal but did not partake of any food when he went to his home at 7:30 before starting on his trip.

The defendant called Leroy Trimble, the young man who accompanied the deceased because he complained of being ill before they started on the route. He testified that as they proceeded, stopping at different farms, Minner gradually grew worse. Glen A. Reno, in charge of the employer's office, also testified that the deceased complained of illness during the afternoon.

Dr. Nader, called by the claimant, stated that the patient told him the pain came on about 9:30 in the evening and that just prior to that he had lifted a can of milk. This witness, who was present at the operation, stated that the deceased had a chronic ulcer, one of long standing, which was slowly eating its way through the wall of the stomach; that when an ulcer reaches a point of complete perforation, peritonitis follows; that one of the symptoms of the stomach ulcer is the presence of gas in the stomach which Minner told

him he had been having for about three years. This witness expressed the opinion that the lifting of the milk can, causing abdominal pressure, was a contributory factor to the cause of death.

Dr. Shoaff, the operating physician, testified that all ulcers do not perforate and that in his opinion the lifting of the can was the contributing factor to the rupturing of the stomach ulcer. He testified further on cross-examination as follows: "Q. Would it not have been highly probable that this man, in his home, in bed, or sitting in his house, or eating at the table, would it not have been probable that the ulcer would perforate the entire wall and cause the condition that you found at the operation? A. That is a probability, but I cannot say how probable, because I cannot say what healing processes might have been, had not this perforation have occurred. I could not say 'highly probable.'"

Dr. Berg, called for the appellant, gave as his opinion that the lifting of the milk can had no connection with Minner's death as "Gastric ulcers are perforated by increased intergastric pressure and not by increase of interabdominal pressure and no lift can produce an increase of intergastric pressure."

The evidence adduced, in our opinion, fails to establish that the death was due to an accident within the contemplation of our statute. The burden was on the claimant to prove that death was due to an accident and not from natural causes. Proof of disability overtaking an employee at his accustomed work is insufficient of itself to constitute an accident. An accident cannot be inferred merely from the injury. "There must be some evidence of an accident, either direct or circumstantial, in the latter instance clearly and logically indicating it": *Adamchick v. Wyoming Valley Collieries Co.*, 332 Pa. 401, 410, 3 A. 2d 377.

In *Gausman v. R. T. Pearson Co.*, 284 Pa. 348, 354, 131 A. 247, the Supreme Court said: "True, Dr. Frederick attributed the exhaustion, or stroke, to claimant's

exertion in the performance of his work and expressed the opinion that but for the work it would not have happened at that time; in other words that the disability was hastened by the work; even so, that alone would not constitute an accident; otherwise it would be unsafe to give employment to anyone advanced in years. Disability, hastened by such exercise, cannot be treated as accidental; neither can death or disability overtaking an employee in the course of his employment and resulting from a natural cause ......"

In *Rocco v. Ellsworth Collieries Co.,* 111 Pa. Superior Ct. 508, 170 A. 316, the deceased employee had arteriosclerosis and was overtaken by death when boring a hole with a heavy breast auger which was part of his routine work. It was alleged he was working faster than usual. We held the proof did not establish an accident.

The leading case defining "accident," as used in the compensation law, is *Lacey v. Washburn & Williams Co.,* 309 Pa. 574, 164 A. 724, where it was held that the word "accident" must be interpreted in its usual, ordinary, popular sense. Mr. Justice DREW, speaking for the court, said (p. 580): "The rule deducible from our decisions limits the right to recover compensation to cases where injury or death is due to some unexpected or fortuitous event;" and not to the usual course of things. See, also, *O'Neill v. Lehigh Coal & Navigation Co.,* 108 Pa. Superior Ct. 425, 165 A. 60.

In *McFadden v. Lehigh Navigation Coal Co.,* 111 Pa. Superior Ct. 501, 170 A. 314, the deceased in the course of his work was stricken with apoplexy. We held that where an employee is performing hard labor but of the same kind and in the same manner as he has been doing for several years, the over-exertion from such hard labor is not an accident within the terms of the Workmen's Compensation Law.

In *Orlando v. Pa. R. R. Co.,* 133 Pa. Superior Ct. 588, 3 A. 2d 220, a machinist was engaged in raising

a "light engine" by two jacks which required considerable physical effort. Immediately thereafter he complained of pain in his abdomen. Death resulted a few days later from a perforated ulcer. The deceased had formerly stated that he was not feeling well. We held that the claimant failed to carry the burden of showing an accident, that is, some actual violence in the nature of a strain, sprain, twist, or rupture, causing a break or sudden change in the physical structure of the body. In that case there was no evidence of an unusual strain or over-exertion. See, also, *Amentlar v. New Upper Lehigh Coal Co.*, 131 Pa. Superior Ct. 97, 198 A. 678.

In the recent case of *Miller v. Lycoming Mfg. Co. et al.*, 135 Pa. Superior Ct. 558, 7 A. 2d 22, the claimant suffered a detached retina while doing his usual, everyday work, which was caused by one of the blows delivered by him with a hammer. We held there was not sufficient proof of an accident and reversed an award approved by the board and the lower court. Judge PARKER very clearly pointed out that there is a clear distinction between those cases where at the time the person had been suffering from a progressive disease or physical weakness related to the injury, and those where there is no existing impairment, physical or functional.

*Rice v. Stevens Coal Co.*, 120 Pa. Superior Ct. 15, 181 A. 516; *Falls v. Tennessee Furniture Co.*, 122 Pa. Superior Ct. 550, 186 A. 272; *Witt v. Witt's Food Market*, 122 Pa. Superior Ct. 557, 186 A. 275, and the other authorities cited by appellant are distinguishable in their facts from the instant case. The circumstances of the injury in each of those citations indicate that there must have been a sudden violence to the physical structure of the body, a fortuitous happening or untoward event which was not expected or designed.

Assuming, as the appellee argues, that this was the first night, instead of the fourth as Mr. Watson testified, that the milk cans were lifted from the water in-

stead of from the road, there was no proof that the mere lifting of a can from the water required any unusual stress or strain or any more physical effort than was necessary to raise it from the side of the road to place it in the truck, which had been the deceased's ordinary work for some weeks. We find nothing that justifies the finding that there was a mishap or untoward event constituting an accident. This is a case of an employee whose body was impaired by a chronic ulcer which may have perforated while performing his regular duties.

Judgment is reversed and entered for defendant.