Fesenbek, Appellant, *v.* Philadelphia.

Argued October 10, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Maurice S. Levy,* for appellant.

*John V. Horan,* with him *Samuel P. Lavine,* Assistant City Solicitors, and *Francis F. Burch,* City Solicitor, for appellee.

OPINION BY STADTFELD, J., March 1, 1941:

This is an appeal in a workmen's compensation case, from a judgment of the court of common pleas, reversing an award to the widow of a fireman, employed by the defendant, made by the referee and affirmed by the workmen's compensation board.

The decedent died some hours after he had performed his duties in connection with a fire on February 10, 1938. On that day, he drove an engine to the scene of the fire, entered the premises with the chief, found no fire but did find the body of a woman who had been burned. After a patrol wagon had arrived, the body of the woman was wrapped in a blanket and, with the help of Fesenbek, was moved and placed on a stretcher. The body was then passed through a cellar window to Fesenbek

and another fireman who had gone outside. They picked up the stretcher and carried it to the patrol wagon. The acting lieutenant then told him to get the details of the fire and the decedent went inside the house, raised a window, sat down on a chair and said, "I can't take the details,—I don't feel good." He then went outside, did not drive the engine back, but climbed on the engine and returned to the fire house and went to bed. Some four hours later, he died.

There was no evidence that anything unusual occurred. Another fireman who appeared for the claimant, testified there was no accident; that there was no difficulty in carrying the body to the patrol wagon. Although this witness testified that the body presented an unusual sight burned "like that", he also testified that he saw many bodies burned, many burned worse than that and many sights worse than that. He had been a fireman for 12 years; Fesenbek for 19 years.

The claimant's physician testified that the decedent's death was caused by a coronary occlusion which was "probably" hastened by the events immediately preceding the deceased's symptoms; that a coronary occlusion may appear at any time without any cause and without any shock of any kind. He also testified that the decedent had heart disease prior to the time of the accident. These events, which he enumerated as driving a fire truck, lifting a body (on the stretcher) and "exposing" himself to the incidents which occurred, he regarded as an added strain on the heart. The defendant offered no testimony.

The judgment must be affirmed as neither the lay testimony nor the medical testimony warrants any other conclusion.

The referee's finding of fact which was adopted by the board, and on which the award was based, is as follows: "That on February 10, 1938, Richard C. Fesenbek, deceased, while in the employ of the defendant, met

with an accident in the line of his duty. He was called on to assist in extinguishing a fire ...... and, in discharging said duty, went to the basement of said premises where he discovered the charred body of a woman still engulfed in smoke and flames of whatever garments remained on her, as a result of which he suffered a shock which caused such a stress and strain to his physical structure as to bring on a coronary occlusion, which resulted in his death the same day."

We quote from the brief for the appellant: "If we take the testimony as presented that upon viewing and coming into contact with the body of this burned woman, the decedent was heard to say, 'I certainly did get a belly full from that woman' and that he was made sick thereby, we must come to the conclusion that the death was caused by the *nervous excitement and shock which the decedent underwent* at this particular fire." (Italics supplied).

If we accept this quotation as a correct statement of the facts, it affords no basis for recovery. From a careful examination of the record, we find no evidence of an accident or any undue exertion.

An accident has been defined as follows (quoting from the opinion of Mr. Justice Drew) in *Lacey v. Washburn & Williams Co.*, 309 Pa. 574, 164 A. 724; "The word accident—as used in the act—must be interpreted in its usual, ordinary, popular sense. Webster has defined it as 'an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance; contingency.' ......

...... That which distinguishes an accident from other events is the element of being unforeseen; an accident is an occurrence which proceeds from an unknown cause, or which is an unusual effect of a known cause, and hence unexpected and unforeseen. The death of an employee, unless it is the result of some untoward happening, not expected or designed, a mishap or fortuitous

happening, aside from the usual course of events, is not compensable under our statute. ......"

In the instant case, the decedent (1) drove the fire engine to the fire—this involved nothing unusual. It was his usual work. (2) He saw the burned body of a woman and helped place it on a stretcher. When Fesenbek arrived at the house the woman was already dead. From the moment he entered the building, nothing unusual or unexpected happened. The fire was out. Fesenbek saw the woman but the act of *looking* at her body hardly comes within the definition of an accident; nor does it appear that any great or unusual effort was required to assist placing the body on the stretcher. The fireman who appeared and testified for the claimant testified that he saw many bodies burned, many worse than "that". For a fireman on active duty at a fire to view such a scene or to help move the body on to a stretcher, can hardly be described as a "mishap" or sudden and unexpected event. (3) He lifted the stretcher and carried it to the patrol wagon. There was no testimony that this required any great effort or was attended by anything unexpected. He was assisted by another fireman who testified (for the claimant) that this was accomplished without difficulty. The three events described above, taken separately or together, do not constitute an accident.

Fesenbek suffered no injury as a result of extra exertion or activity. He was a paid fireman in the city of Philadelphia. His physical labors at the fire were of an insignificant character. In his employment gruesome sights, calamity and ruin are a commonplace. Furthermore, it is of utmost importance to note that the decedent was suffering from heart disease and that the occlusion that caused his death could have occurred at any time without "any cause" and without any shock of any kind. The claimant's doctor, Dr. L. B. LaPlace, also testified as follows: "...... What I told you at

the beginning was that this man was liable to have this coronary occlusion at any time at all without any precipitating cause and from that point it is possible that these events had nothing to do with the occlusion. The alternative is the fact that at the time when the occlusion occurred, he was doing something which I regard as an added strain upon the heart and capable of accelerating the onset of such an attack and leads me to believe that *probably* these events accounted for the fact that the occlusion occurred at that time. I also want it understood that as the Referee has stated, the decedent undoubtedly had heart disease prior to the time of the accident because it is extremely rare for a coronary artery to become occluded without pre-existing disease in the vessel which does not necessarily manifest itself symptomatically."

Judge PARKER, in the recent case of *Amentlar v. New Upper Lehigh Coal Co.,* 131 Pa. Superior Ct. 97, 198 A. 678, said: "The facts in the case we are considering, ...... disclosed an existing disease as a possible cause of death. That further complicates the situation and makes a satisfactory deduction more difficult for it is necessary to find that there was an accidental cause which has contributed to the disability or death and that the disease was not the sole cause."

In that case, the decedent, a minor, dragged a heavy pole some distance and died shortly thereafter of a hemorrhage of the brain. The claimant's physician testified that this exertion caused the rupture of the blood vessel and resulted in his death. The claimant was, however, suffering from arteriosclerosis. The opinion of the court, continues as follows: "Here Amentlar was suffering from a progressive disease which was shown by claimant's own witnesses to be a possible cause of death at any time. This excludes that line of cases where one in good health is suddenly incapacitated and from the circumstances an accidental

cause may be inferred. While claimant's doctor testified that the exertion was a contributing cause of death, such fact, if accepted, was not sufficient to support the claim. As we pointed out at the outset, the compensation law does not cover all injuries resulting to an employee while in the course of his employment; he must prove that there was at least a contributory and accidental cause. The claimant is left without any support in the record for her claim that the injury was due to an accident, since there is not any evidence that her decedent was performing any unusual work or in fact any other kind of work than he performed regularly or that he was doing it in an unusual manner."

Dr. L. B. LaPlace, above mentioned specialist in diseases of the heart, was present during the hearing and in response to a hypothetical question expressed his opinion "That the events immediately preceding the onset of the deceased's symptoms of coronary occlusion probably hastened the onset of the occlusion." Later on in cross-examination, the doctor qualified his opinion by testimony similar to the following: "By Mr. Levy: Q. In your professional opinion when you said *probably*, did you mean that that is your professional opinion that it did? A. Yes, sir, that is my opinion as to the *most likely explanation* of an ambiguous question. Referee: A. In other words, it is the most *probable cause?* A. Yes, sir."

This expression of the doctor's opinion does not, under the authorities, warrant a recovery. In *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 133 A. 256, the Supreme Court, overruling earlier cases, held that the experts would have to testify not that the condition of claimant might have, or even probably did, come from the accident, but that in his professional opinion the result in question came from the cause alleged. See also: *Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264, 3 A. 2d 995; *Monahan v. Seeds & Durham*, 336 Pa. 67, 6 A. 2d 889.

The findings and award are based not upon an accidental occurrence nor on undue or unusual physical exertion, but upon the shock to the feelings of the decedent upon viewing a distressing object. That there can be no recovery for such an injury expressly appears in the opinion of President Judge KELLER in the case of *Hoffman v. Rhoads Const. Co.,* 113 Pa. Superior Ct. 55, 172 A. 33, as follows: "One's purely subjective emotions, the result of anger, grief, joy or other mental feeling, if unaccompanied by physical force or exertion, cannot be made the basis of a compensable accident under our Workmen's Compensation Law. There must be the *happening* of some undesigned, unforeseen, sudden or unexpected *occurrence,* some untoward or fortuitous *mishap* or *event* outside of the usual course of things: *O'Neill v. Lehigh Coal & Navigation Co.,* 108 Pa. Superior Ct. 425, 429, 165 A. 60; *Lacey v. Washburn & Williams Co.,* 309 Pa. 574, 164 A. 724; or a sudden development from some abrupt violence to the physical structure of the body: *Micale v. Light,* (State Workmen's Ins. Fund), 105 Pa. Superior Ct. 399, 161 A. 600; and this is not satisfied by a merely subjective state of feeling, not the result of physical force or violence exerted either by the employee or from outside, resulting in the employee's injury or death. The consequences of such exertion may be external or internal, but physical force, violence or strain must be present.

"The rule is similar to that long in force in this State in actions of trespass for negligence, that there can be no recovery for the consequences of purely mental shock or suffering apart from the application of some physical force or violence. ......"

The case was properly disposed of in the court below. Judgment affirmed.