## Shane, Administratrix v. Bethlehem Steel Company

*Bernard V. O'Hare, Jr.*, for plaintiff.
*Jackson Sigmond*, for defendants.

GRIFO, J., April 17, 1973.—This case is before the court after reargument was granted pursuant to defendants' rule to show cause.

Plaintiff instituted this suit against defendants, seeking recovery of damages under the Wrongful Death Act and the Survival Statute. Defendants' preliminary objections in the nature of a demurrer asserted that the sole remedy, available in this matter, was under the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended, 77 PS §1. In an opinion and order of this court, defendants' preliminary objections were denied and dismissed. Defendants filed exceptions, and subsequently on petition and rule of defendants, reargument was granted. Hence, this second opinion and order.

The action arises out of an industrial accident which resulted in the death of plaintiff's decedent. The corporate defendant, Bethlehem Steel Company, was

decedent's employer, the individual defendants his coemployes.

The relevant facts of this case, pleaded in the complaint, can be summarized as follows:

The individual defendants, as employes of the corporate defendant, were engaged in a process by which large ingots of metal were being smashed by use of a drop ball hammer, the end product being scrap metal. The process was being carried out in a pit approximately 10 feet deep and 300 feet from the site of an office building in which plaintiff's decedent was located. In the bottom of the pit was an iron plate, which was bent in such a way as to act as a catapult, ejecting pieces of metal from the pit. At the time of decedent's death, a 580-pound piece of metal had been placed into the pit which was to be pounded by the drop ball hammer. However, the hammer struck the iron plate on the floor of the pit and caused the 580-pound piece of metal to be hurtled through the air, ultimately smashing through the office building in which plaintiff's decedent was located, striking him on the head and killing him.

Plaintiff's position, as averred in her complaint, is as follows:

"17. Immediately prior to decedent's death Defendants were engaged in smashing metal scrap and cast iron which was located in a ten feet deep pit approximately 300 feet removed from the site of the office building in which Plaintiff's decedent was located.

"18. Said scrap was produced by smashing ingot molds with a drop ball hammer.

"19. Said operation had been previously conducted in said location in such manner that scrap pieces escaped from said pit endangering all persons in the vicinity of same.

"20. That the condition of the pit in question, prior

to decedent's death, had been many times called to the attention of Defendants and requests had many times been made of them to take precautions to avoid harm to persons but Defendants intentionally, willfully and with complete disregard for the safety of Plaintiff's decedent and others failed to take any action to correct said condition.

"21. That Defendant intentionally permitted said pit to be utilized although an iron plate located in the bottom thereof was in such a bent condition that it acted as a catapult in ejecting scrap from said pit and had previously catapulted scrap from same prior to the death of Plaintiff's decedent, all of which was well known to the Defendants, who intentionally failed to take necessary steps to preclude same from happening.

"22. Said pit was improperly constructed, equipped and was improperly guarded so as to intercept any flying piece of scrap and Defendants intentionally and with wanton disregard for the safety of all persons in the vicinity of same failed to take any precautions to remedy said condition.

"23. That immediately prior to decedent's death, Defendants caused said ball hammer to drop into said pit for the purpose of smashing cast iron.

"24. That when said ball hammer struck said cast iron it caused said steel plate underneath the cast iron to catapult whereby a piece of scrap iron, weighing 580 lbs., was thrust out of said pit with such force and velocity as to cause same to travel at least 250 feet through the air, ultimately smashing through the office building in which Plaintiff was located, striking Plaintiff on the head and killing him.

"25. That Plaintiff's death was caused by the intentional act of all of the aforesaid Defendants."

The issue before us is whether there has been such

an intentional infliction of bodily harm as would remove this case from the exclusive remedy of the Workmen's Compensation Act.

An intentional tort by an employer opens him to common law liability for the consequences of the tort: Readinger v. Gottschall, 201 Pa. Superior Ct. 134. Plaintiff contends the Readinger case is controlling. The Readinger case, however, involved a personal assault by the employer upon the employe and is clearly inapposite to the facts herein.

Plaintiff also contends:

"With respect to co-employees, their common law liability is also extant since the Workmen's Compensation Act in express terms holds them liable at common law for 'intentional wrongs': Act of August 24, 1963, P. L. 1175, sec. 1, 77 PS §72."

There being, to date, no appellate court interpretation of the words "intentional wrong," as they relate to the Workmen's Compensation Act, we must construe this phrase in accordance with its "common and approved usage": Act of May 28, 1937, P. L. 1019, sec. 33, 46 PS §533. Turning to Webster's Third (New) International Dictionary, Unabridged, we find the word "intentional" defined as follows: "relating to intention or design." "Intention" being defined in terms of the word "intent," it is appropriate, then, to quote that definition here: "(1) the act, fact, or an instance of intending; (2) the design or purpose to commit any wrongful or criminal act that is the natural and probable consequence of other voluntary acts or conduct."

Further, Restatement 2d, Torts, defines "intent" as follows: "The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it": §8A Intent.

Conversely, the Superior Court of Pennsylvania has stated:

"In determining whether there has been an accidental injury as contemplated by the Compensation Act, 'The word accident . . . must be interpreted in its usual, ordinary, popular sense. Webster has defined it as "an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance; contingency." . . . That which distinguishes an accident from other events is the element of being unforeseen; an accident is an occurrence which proceeds from an unknown cause, *or which is an unusual effect of a known cause, and hence unexpected and unforeseen*.' Baur v. Mesta Machine Company, 393 Pa. 380, 384, 143 A.2d 12, 13; Lacey v. Washburn & Williams Co., 309 Pa. 574, 577, 164 Atl. 724, 725": Cole v. Pennsylvania Power & Light Co., 197 Pa. Superior Ct. 648: 180 A.2d 272 (1962). (Emphasis in opinion.)

In this case, the dropping of the drop ball hammer was planned; therefore, if this was an accident, the case must fall into the second category set forth above, involving an unusual and unforeseen effect of a known cause.

Despite allegations that on prior occasions pieces of metal flew out of the pit, that a dangerous condition existed and was allowed to continue to exist, and that defendants were guilty of "wanton disregard for the safety of all persons in the vicinity," plaintiff has failed to make out a case of intentional infliction of injury sufficient to take the cause of action out of the ambit of the Workmen's Compensation Act.

"Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot be stretched

to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury.

"Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, or wilfully failing to furnish a safe place to work, this still falls short of the kind of actual intention to injure that robs the injury of accidental character": 2 Larson, Workmen's Compensation Law, page 157, §68.13 (1970).

Although there are, to date, no Pennsylvania appellate court decisions on this issue, other jurisdictions have passed on this question, uniformly holding in line with the above-quoted language. In a Kansas case, involving the electrocution of an employe by a machine which was known to be dangerously wired for at least four years prior to the fatality, the court stated:

"Whether the facts alleged in the petition show negligence only or whether they show wantonness on the part of the employer may be debatable. But even if the acts or conduct alleged do show wantonness, we find no authority either in the statute or in our decisions construing the statute that would justify us in saying that the injury was not compensable under the workmen's compensation act . . . If so compensable, an action at common law will not lie. To hold otherwise would open a by-pass around the act and permit attempted recovery in common-law actions which the act was intended to supersede": Duncan v. Perry Packing Co., 162 Kan. 79, 174 P.2d 78 (1946).

The Pennsylvania Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended, 77 PS §1, et seq., provides that compensation shall be paid "when employer and employe shall by agreement, either express or implied . . . accept the provisions of article three of this act": Section 301(a) of article III, 77 PS §431. It is conclusively presumed under the act that the parties have accepted the provisions of the act and have agreed to be bound thereby unless written notice of an intention that the act not apply be given by either party to the other. There has been no allegation that such written notice was ever given: Section 302(a) of article III, 77 PS §461. Section 303 of article III of the Act of June 2, 1915, P. L. 736, as amended, 77 PS §481, specifically states:

"Such agreement shall constitute an acceptance of all the provisions of article three of this act, and *shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages for any injury or death occurring in the course of the employment,* or to any method of determination thereof, other than as provided, in article three of this act. Such agreement shall bind the employer and his personal representatives, and the employe, his or her wife or husband, widow or widower, next of kin, and other dependents": Evans v. Allentown Portland Cement Co., 433 Pa. 595, 252 A.2d 646 (1969) (Italics supplied.)

Wherefore, the court enters the following

### ORDER OF COURT

And now, to wit, April 17, 1973, reargument having been granted, the prior opinion of court is vacated and defendants' preliminary objections are sustained. Plaintiff is granted leave to plead over within 20 days from the date hereof.