Mosser, Appellant, *v.* Mercersburg Academy et al.

Argued October 25, 1939.

112

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Edwin D. Strite,* for appellant.

*Edmund C. Wingerd,* for appellees.

OPINION BY STADTFELD, J., March 2, 1940:

John M. Mosser, claimant's deceased husband, was a resident of Mercersburg and had been employed by Mercersburg Academy, defendant, for twenty-nine years previous to his death. He worked as a laborer under the supervision of the superintendent of buildings and grounds of the Academy. His duties required him to work on the grounds to assist with the flowers and to do any other job to which he might be assigned including that of a "houseman".

On September 2, 1938, Mosser left his home in good health to go to work as usual. That day, he was assigned the duty of waxing floors in North Cottage, the Headmaster's house, on the campus of the Academy. He worked on that particular day for a period of nine hours on his knees. During the greater part of the time, he worked with practically all his weight on his left knee without the use of any knee pad. Upon his return home that evening, a bruise appeared just below

his left knee, described by claimant as a "big bruised place about that big (indicating about three inches in diameter) and it was all blue and red and looked like it had been hammered." He returned to work, however, and continued to work until September 10, 1938, when his leg reached such a condition as to prevent a return to his employment. Mr. Mosser was taken to Dr. L. H. Hitzrot who diagnosed the condition as cellulitis, a swelling on the leg with dense, red, overly warm tissue just below the left knee and extending down to the end of the upper third of the lower bone of the leg. He was treated until September 12, 1938, when he was then removed to a hospital. On the same day, an examination made by Dr. L. H. Seaton revealed a bleb or blister just over the tibial tubercle. The leg was then incised and drained. Mr. Mosser showed almost immediate improvement, but two days later a second pocket had formed lower on the leg. Another incision was made and the wound drained. The patient improved and the leg was apparently healed. About five o'clock on September 19, 1938, however, Mr. Mosser suddenly became very ill and died before Dr. Seaton reached the hospital. No post-mortem or autopsy was performed upon the body of the decedent, his widow having refused permission.

The referee, before whom the hearing on claimant's petition for compensation was held, found that the cause of Mr. Mosser's death was "a cerebral embolus which resulted directly from the infection of the left leg," and that "the condition for which John M. Mosser was treated and from which he died resulted from a trauma" which "occurred while in the employ of the defendant on September 2, 1938." The referee concluded that claimant's deceased husband died as a result of an injury by accident in the course of his employment, and awarded claimant compensation.

On appeal to the Workmen's Compensation Board,

the referee's finding of fact as to the cause of decedent's death was set aside, and the following finding was substituted: "...... the Board is of the opinion and finds as a fact that the claimant has failed to show by a preponderance of the testimony that the decedent sustained an accident on September 2, 1938 or at any other time during the course of his employment with the defendant which caused the condition for which the decedent was treated or that the decedent's death which occurred on September 19, 1938, resulted from the condition for which the claimant was treated." The board concluded that claimant was not entitled to compensation and accordingly, set aside the referee's award and dismissed claimant's petition.

The court of common pleas sustained the board's decision and entered judgment for the defendant. This appeal followed.

The question here involved is whether appellant met the burden of showing, by sufficient competent evidence, that her husband's death resulted from an infection growing out of an injury sustained by accident in the course of his employment.

This is not a case in which there was such an unbroken sequence of events as would justify the conclusion, without the aid of expert testimony, that there was a causal connection between the happening of some event and the death of a workman. It was therefore necessary in this case for appellant to show a connection between the happening of some event, amounting to an "accident" in the course of her husband's employment, and his death. It was incumbent, moreover, upon appellant to show that the infection complained of entered decedent's body through the bruise on his knee. See *Easton v. Elk Tanning Co.*, 129 Pa. Superior Ct. 535, 195 A. 648. Appellant relied upon the testimony of three medical witnesses.

Dr. Hitzrot, who examined and treated decedent, diagnosed the condition in his leg as cellulitis. He

testified, in part, as follows: "Q. Doctor, from your examination of the injury which you first made, and from your knowledge of the testimony here that he was engaged on the day when he gave you the history that this happened in waxing floors for nine hours during that day, and from the evidence which has been given that he complained that he had bruised his leg while waxing floors, can you state whether in your opinion this injury which you examined was caused or was not caused by an injury or bruise which he received while waxing floors?  A. I *presumed* that that was the cause of the injury, yes.  Q. And, of course, the subsequent condition was, or was the subsequent condition which you observed caused by the injury for which you first examined and treated him?  A. The whole condition of the leg from beginning to end *was associated* with the condition which I saw first on the tenth of September.  Q. Do you know whether or not he recovered from that injury?  A. He didn't recover. Q. Are you able to give from your knowledge or examination your opinion as to the cause of his death? A. I didn't see the incident and *I can't give an opinion as to the exact cause of death at this time.*" (Italics supplied).  It is apparent from this testimony that Dr. Hitzrot could not give an opinion as to the cause of decedent's death; he could not even give a clear answer as to the exact cause of the injury; he merely stated that some "association" existed between the injury and the infected condition of the leg.  From the testimony adduced on cross-examination of Dr. Hitzrot, it could be inferred that infection may set in in a bruised area either through a break in the skin at the point of the injury, or through some other part of the body and become localized in a bruised area by reason of that area's being more susceptible to infection.  The indefiniteness of this testimony was due to the fact that he was not asked point blank whether in his opinion the infection in this case had entered through the bruised area.

Dr. Seaton, who treated decedent at the hospital and examined him after his death, testified as follows: "Q. Doctor, what in your opinion was the immediate cause of his death? A. From the symptoms that he presented as given me by the nurses who were with him it must have been a cerebral embolus. Q. Now, Doctor, you have heard the evidence which has been given here as to Mr. Mosser's having on the second of September been engaged in scrubbing or polishing floors, his complaint that he injured or bruised his knee while polishing those floors, the evidence that previous to that time he had no injury to his knee and had been in good health, and the evidence of Dr. Hitzrot as to his subsequent condition. From that evidence and your own examination can you state what in your opinion caused the embolism which resulted in his death? A. It is my opinion that it came from the infection. Q. That is, the infection of the knee which you treated? A. That is right." But under cross-examination, Dr. Seaton testified: "Q. Then coming down to 'brass tacks' you really don't know what caused this man's death? A. One could not be definite without doing a post-mortem. Q. Now, did you perform a post-mortem or an autopsy? A. No. Q. Why didn't you? A. Mrs. Mosser said no. Q. Mrs. Mosser would not agree to it? A. That's right. Q. And it was only if you had had an autopsy or post-mortem examination that you could have determined what was the actual cause of death? A. That's the only definite way, although such things do occur very frequently." There was nothing in Dr. Seaton's testimony to show just how the infection set in, nor in what way the infection was connected with the injury sustained. The effect of all of Dr. Seaton's testimony considered together, was to indicate that he could not state definitely the cause of death in the absence of an autopsy. No autopsy having been performed, because of claimant's objections, a definite cause of death could not be assigned. When the exact cause of death can be determined only by an

autopsy and the claimant refuses to permit it to be performed, the responsibility must rest with her: *Adamchick v. Wyoming Val. Col. Co.,* 332 Pa. 401, 3 A. 2d 377.

The family physician, Dr. Dovey, who had never treated the decedent nor examined him even following his injury, testified in behalf of claimant. His testimony was based solely upon the evidence of the other witnesses adduced at the hearing before the referee. This witness testified that the cellulitis was the result of the pressure of decedent's knees on the floor while at work, and that the "embolus in this particular case had to originate in the injured knee because there was no other part of his (decedent's) body diseased that we knew of." When questioned as to what, in his opinion, was the cause of decedent's death, Dr. Dovey answered, "I wouldn't doubt Dr. Seaton's word on the certificate he signed of the death, cerebral embolus, because I had those cases in my own practice, and not one but I have had many of them ...... From the history of the case, yes, I would say it (decedent's death) was caused by cerebral embolus."

The combined testimony of Dr. Hitzrot and Dr. Seaton completely failed, in our opinion, to prove any causal connection between decedent's injury and the subsequent infection of his leg, or to establish, by the requisite standard of certainty, the fact of decedent's death as resulting from the injury. The testimony of Dr. Dovey, who appeared less qualified to render an expert opinion than either of the other witnesses, was the most positive. His testimony alone can be regarded as wholly favorable to claimant's case. Yet that testimony, together with all the evidence given by the others, was a matter for the consideration of the compensation authorities.

The Workmen's Compensation Board examined the testimony of all the witnesses and considered their credibility. It then substituted its own findings for

those of the referee. This it had the authority to do. As stated in *Seitzinger v. Fort Pitt Brewing Co.,* 294 Pa. 253, 144 A. 79, "...... the burden of proof was upon the claimant, and, if the evidence to sustain that burden is not believed by the board, it may decline to grant an award thereon, or if, in the opinion of the board, such evidence is so indefinite and inconsistent that it cannot be accepted as a basis for a finding which would sustain an award, no compensation need be given." See also, *Swiderski v. Glen Alden Coal Co.,* 114 Pa. Superior Ct. 21, 173 A. 865; *Easton v. Elk Tanning Co.,* supra.

After a careful examination of the entire record, we are in accord with the board and the court below that claimant failed to adduce sufficient competent evidence to meet the burden imposed upon her in order to establish the conclusion that her husband's death was compensable under the provisions of the Workmen's Compensation Act.

Judgment affirmed.