# Kempa *v.* Pittsburgh Terminal Coal Corporation, Appellant.

Argued November 16, 1938.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES,
JJ.

*Sidney J. Watts,* of *Baker & Watts,* for appellant.

*Samuel Krimsley,* for appellee.

OPINION BY BALDRIGE, J., December 16, 1938:
The referee and the board in this compensation case
found as a fact that the claimant is suffering a total
disability as a result of an accidental injury sustained
in the course of his employment, and granted an award,
which was affirmed by the court below. We find no
reason to disturb the judgment entered.

The main question for consideration is whether the claimant sustained a concussion of the brain due to an accidental injury.

The claimant, 61 years of age at the time of the injury on March 2, 1936, had been a miner for thirty years. When being transported to the place of his work, loose coal fell from the roof, striking him on the head and shoulders and rendering him unconscious for a short time estimated from two to five minutes. He was lifted out of the car and taken to the mine doctor who ordered him to return home and go to bed. The next day the doctor visited him, gave him a "shot" in the arm, and directed that ice be put on his head. The claimant returned to work on March 6, 1936, and continued at his employment until Labor Day, when he was compelled to quit owing to his injuries.

The appellant's chief complaint is to the sixth finding of fact of the referee, affirmed by the board, which is as follows:

"Sixth: From a consideration of all the testimony in the case, particularly the fact that the claimant suffered a concussion of the brain at the time of the accident, and the continued complaints of headache and dizziness thereafter, your Referee is of the opinion and finds as a fact that said claimant is suffering with total disability and that said disability is the result of the injury sustained by him on March 2, 1936."

There is no doubt that the claimant had been steadily employed as a miner until the accident, that there was an accidental injury, and that immediately and directly thereafter total disability, for at least a time, followed.

Testimony offered upon the part of the claimant was to the effect that after the accident he apparently did not readily comprehend what was said to him, that he was unable to sleep, suffered from severe headaches, dizziness, had trouble with his eyes, and became irritable. Dr. Frederick, a specialist in nervous and mental diseases, examined the claimant on November

5, 1936. He stated that in the course of his examination he had difficulty in getting claimant to comply with his request; that repeatedly he had to urge him to remove his clothing as he would stop often while undressing. Claimant's blood vessels appeared to be normal and there was no evidence of arteriosclerosis. The doctor's conclusion was that "a concussion developed at the time of his injury, and that his personality changes that were reported by his family were the result of that injury." He expressed the opinion that as long as the headaches continue, the claimant is totally disabled to work. Some of the statements claimant made to Dr. Frederick respecting the time he returned to work and that he had not suffered from any headaches prior to the date of the injury were contradictory to other statements he had made, as defendant contends, but that could be reasonably attributed not only to his mental condition but also to the fact that he is a foreigner and evidently unable readily to speak and comprehend English, as a portion of his testimony had to be translated by an interpreter.

Dr. Mitchell, called in behalf of the defendant, testified that claimant "has a degree of arteriosclerosis and that is entirely possible to account for his headaches; whether it is the entire cause of headache is a question."

In Reed & Emerson's work, "The Relation between Injury and Disease," it is stated on pages 382 and 383: "Injuries to the skull and brain range from very mild concussions followed by unconsciousness for a few seconds only, to severe accidents which bruise or lacerate the brain, resulting in severe illness or death ...... But if no evidence of any such disease (cerebrospinal syphilis) is found, we may assume, whether or not a wound is found on the head, that in all probability the patient's coma resulted from the accident." There was no evidence that claimant had any disease of that character.

We think it may be fairly concluded from all the evi-

dence adduced that notwithstanding claimant previously had suffered some from headaches, they were not so severe as to interfere with his normal work until he met with the accident, and that they became more intense and frequent thereafter.

The connection between the injury, which resulted from a fall of coal that buried claimant to his waist, and the disability which followed was not remote but so direct and natural that an award does not depend solely on the testimony of the professional witnesses; essential facts to support it were established by other competent evidence: *Grobuskie v. Shipman Koal Co.*, 80 Pa. Superior Ct. 349, 351; *Mohr v. Desimone & Sayers*, 110 Pa. Superior Ct. 44, 49, 167 A. 504; *Witt v. Witt's Food Market et al.*, 122 Pa. Superior Ct. 557, 564, 186 A. 275.

In *McLaughlin v. Penn Anthracite Mining Co.*, 117 Pa. Superior Ct. 196, 177 A. 502, the claimant's husband sustained a fatal injury as a result of lags falling on him from the roof of a mine, February 8, 1932, and his death followed on July 20th from acute tuberculosis. The board found that the accident caused his death. The appellant argued that there was no evidence to show that the accident was the proximate cause of the tuberculosis. It appeared there, as here, that the employee was in reasonably sound health until he was knocked down and covered by material that fell from the roof of the mine. He tried to work thereafter but his condition grew steadily worse. We affirmed the award.

Taking into consideration all the testimony offered by the claimant, we have no difficulty in reaching the conclusion that the granting of the award was fully justified. As this court said, speaking through President Judge KELLER, in *Nesbit v. Vandervort & Curry et al.*, 128 Pa. Superior Ct. 58, 62, 193 A. 393: "...... the fact finding body ...... has a right to use the conclusions and tests of ordinary everyday experience and draw the inferences which reasonable men would thus draw

from similar facts." See, also, *Broad Street Trust Co. v. Heyl Bros. et al.,* 128 Pa. Superior Ct. 65, 69, 193 A. 397. Wigmore in his work on Evidence (2d ed.), vol. 1, §27, p. 232, states: "The conclusions and tests of everyday experience must constantly control the standards of legal logic."

In *Fetrow v. Oliver Farm Equipment Sales Co. et al.,* 132 Pa. Superior Ct. 39, 1 A. 2d 249, cited by appellant, the deceased suffered a coronary thrombosis while moving heavy machinery and died. We held that as the attack was sustained while decedent was engaged in his usual work, in the ordinary manner, there was no evidence, as there was in this case, to support a finding that he suffered an injury by an accident.

The appellant complains further that the referee failed to make specific findings of fact as to the nature and extent of claimant's head injury, the amount of coal that fell, the speed of the car, and other details, but we find no merit whatever in this contention as all the underlying facts were clearly established and those essential on which to base an award were found.

Judgment affirmed.