Opinion by
 

 Cunningham, J.,
 

 The judgment from which the employer in this workmen’s compensation case has appealed cannot be sustained as entered. The main difficulty is that no one seems to have paid any attention to the important fact that the legislature expressly provided in Section 306(c) of the reenacting ,and amending Workmen’s Compensation Act of June 4, 1937, P. L. 1552, 77 PS §513, that permanent “loss of the function” of a joint or joints of a finger of an employee, caused by an accident sustained in the course of his employment, should be considered a “permanent injury” within the meaning of that .section and be compensated by an award of
 
 *532
 
 sixty-five percentum of wages during the definite number of weeks specified therein.
 

 In addition to adding toes, as members of the body for the accidental loss of which compensation shall be paid under Section 306(c), and providing that the loss of one phalange or more of a toe, thumb or finger, shall be considered equivalent to the loss of the entire member, the following new provision was inserted in the section:
 

 “The loss of the function of the distal joint shall be considered compensable for the period of one-half the number of weeks set forth for the loss of the toe or finger involved. The loss of the function of the proximal joint shall be considered to be the loss of the use of the toe or finger, and shall be compensable as set forth above for the loss of the toe or finger involved.”
 

 It is not questioned that the claimant on December 2, 1938, (while the above amendments were in force) sustained an injury by an accident in the course of his employment; Avhile repairing an electric coal conveyor he slipped on ice and his left hand was caught in the gears of the machine with the result that the first, or index finger, the second finger and the fourth, or little finger, were injured. He was taken to a hospital and came under the care of Dr. Albert Macintosh Morton, who testified in his behalf. This witness described the injuries as a “compound comminuted fracture of the terminal phalange of the middle (second) finger”; and “macerations of the terminal soft tissue of the index (first) and ring fingers.” The first phalange and a part of the second phalange of the second finger were amputated. Under the provision that “the loss of one phalange or more of a...... finger shall be considered equivalent to the loss of the entire......finger,” claimant clearly became entitled to an award of compensation at" the rate of sixty-five percentum of his wages— $22 per week — for a period of forty weeks for the loss of his second finger.
 

 
 *533
 
 With relation to the injuries to claimant’s first and fourth fingers, Dr. Morton at the time of the first hearing before a referee, April 18, 1939, testified the dead tissue had been cut away and the ends of these fingers had healed “with a certain amount of deformity of the nails and with certain areas of tenderness over the tips of the fingers,” and said he believed these fingers would “come around in their entirety as far as function is concerned.”
 

 Upon the record as it then -stood the referee properly made an award at the rate of $14.30 (65% of $22) for a period of 40 weeks, or $572 for the loss of claimant’s second finger.
 

 Thereupon, the claimant appealed to the board upon the ground that the referee had erred in failing to award any compensation for the injuries to his first and fourth fingers. The board, citing
 
 Lente v. Luci,
 
 275 Pa. 217, 119 A. 132;
 
 Sustar v. Penn Smokeless Coal Company,
 
 85 Pa. Superior Ct. 531; and
 
 Olinski v. Lehigh Valley Coal Co.,
 
 93 Pa. Superior Ct. 221, remanded the record to a referee to take additional testimony and “determine whether, claimant suffered any
 
 disability
 
 beyond the forty-week period of compensation provided for in Section 306(c), and, if so, the
 
 extent
 
 of such disability.” (Italics supplied.)
 

 It was at this point that the difficulties in this case began. Manifestly, the above amendments of 1937 to Section 306(c) were intended to widen its scope by including therein certain indicated permanent injuries to the thumbs, fingers or toes of an employee. The medical testimony showed clearly that as respects any actual loss of any portions of claimant’s first and fourth fingers such loss was less than the first phalange of each, but it also indicated that no part of the bone of that phalange of either finger was injured. These injuries, therefore, did not come within the paragraph reading: “The loss of less than the first phalange of the toe, thumb, or of any finger, shall be considered equivalent to the loss
 
 *534
 
 of one-half of such toe, thumb or finger, and shall be compensated at the same rate as for the loss of a toe, thumb or finger, but for one-half of the period provided for the loss of a toe, thumb or finger: Provided, however, That the accident involves injury to part of the bone of the phalange.” See also
 
 Matkosky v. Midvale Co.,
 
 143 Pa. Superior Ct. 197, 18 A. 2d 102.
 

 Another possible permanent consequence of claimant’s accident which would entitle him to compensation under Section 306(c) would be “loss of the function” of one or more joints of either or both fingers. But the referee made no findings upon this subject, nor did the board direct him to do so. Its action seems to have been based upon a misunderstanding of the cases relied upon.
 

 In the Sustar case the employee had suffered the loss of an eye and also a serious and permanent disfigurement. Here the claimant sustained the loss of one finger and possibly a permanent loss of function in certain joints of two other fingers. Here, as there, all these injuries are expressly mentioned, and compensation therefor fixed, in Section 306(c) as amended.
 

 We held in that case that where an employee “receives in the same accident two or more injuries compensable under 306(c), as neither of them is based on actual loss of earnings or incapacity to labor, but is fixed on the theory that each such injury is valued by a specific or determined number of weeks’ compensation, the claimant is entitled to the aggregate periods allowed for the several injuries.” It was added that the “rule applies to all injuries embraced within clause 306(c), to permanent disfigurement [or, as here, permanent loss of function] as well as the loss of a member; for they are classed together under the same clause and section because the injuries are alike permanent and are alike difficult of just determination on any other basis.”
 

 In the Olinski case the employee’s right foot was so crushed as to require amputation and his left leg was broken. His total disability ended eight months after
 
 *535
 
 the accident; at the end of the 150-week period fixed by Section 306(c) for the loss of his foot, he claimed, but was denied, additional compensation under Section 306(a).
 

 In the Lente case the Supreme Court said the legislative mandate, expressed in Section 306(e), fixed the amount to be paid to employees suffering any one, or more, of the injuries therein enumerated “without considering, but including, all incapacity to labor that may be connected therewith, whether such incapacity be total, partial or no incapacity at all.”
 

 Upon the return of the record a hearing was had before the successor of the original referee on October 4, 1940, at which Dr. Morton was recalled and examined particularly with relation to the injuries to claimant’s first and fourth fingers. The witness stated “there was a laceration of the first finger and a fracture of the fourth finger”; in another portion of his testimony (53a) he spoke of a fracture also of the third finger. Claimant had been under treatment by Dr. Morton continuously since the former hearing at which he had expressed the opinion that the fingers now in question would “come around in their entirety as far as function is concerned.”
 

 At the second hearing the doctor stated, in substance, that experience had convinced him he was too sanguine in his former opinion. Excerpts from his testimony read: “Q. Do you think that any further reeducation will take place as to the second and fourth, or rather the first and fourth fingers? A. I don’t think so. Q. And, how much function would you say there is in those fingers, today? A. I should say that he has suffered at least a 30% disability in those fingers. In other words, there has been no appreciable improvement in the function of those fingers since the last hearing. Q. Do you think there will be any further improvement? A. I don’t think so....... Q. Did you make any partial amputation whatsoever on any of the other fingers be
 
 *536
 
 sides the middle finger, Doctor? A. No, there was merely suturing of tissues....... (By the referee.) Q. Doctor, you say that the first and fourth fingers are 30% disabled? A. Yes. Q. That is, the function of those fingers? A. The function. Q. Now, do you have any opinion as to the extent of this man’s disability, generally, as a result of the 30% loss of function in those two fingers, for the type of work he’s been accustomed to doing? A. Why, I believe because of the type of work that he does, I believe he’s disabled at least 50%. ......Q. And, would you say that is temporary or permanent? A. I think it’s permanent.”
 

 Based upon the testimony at the second hearing, the referee made a finding (the seventh) that in addition to the loss of claimant’s second finger by amputation he “is suffering a 50% permanent partial disability as a result of the disability in the first and fourth fingers of his left hand.” An award was made in which the award of the first referee of $572 for the loss of claimant’s second finger — forty weeks at $14.30 per week— was repeated and in addition thereto compensation was awarded under 306(b) for a 50% loss in earning power at the rate of $7.15 (65% of $11) per week from September 8, 1939, (the end of the forty-week period for the second finger), to continue for a period of 360 weeks for permanent partial disability — i. e., until the end of the 400-week period fixed by the Act of 1937 for partial disability. The award also provided for the payment of interest and medical and hospital expenses.
 

 Upon appeal by the employer to the board, the seventh finding of the referee was set aside and the following substituted: “7. That in addition to the loss of industrial use of the middle finger of the claimant’s left hand by reason of its partial amputation, the claimant as the result of impaired function of the first and fourth fingers of the left hand suffers a permanent partial disability which reflects itself in a 25% loss of his earnings or earning power.” The award of the referee was
 
 *537
 
 affirmed with the exception that the percentage of loss of earning power was reduced from 50% to 25%, thereby reducing the weekly payments for the 360-week period to $3.68 ($3.58?) per week. The court below entered judgment upon this award, without filing an opinion; the present appeal by the employer followed.
 

 It is clear, from what has been said, that this case cannot be disposed of properly upon the record as it now stands. Neither the findings of the referee nor board are responsive to the primary issue now involved, viz., whether claimant has suffered, in addition to the loss of the second finger of his left hand, permanent “loss of function of the distal joint......or proximal joint,” or both, of one or more of the remaining fingers of that hand. Nor was the testimony, which as reported is confusing, directed to that issue. It will therefore be necessary to have the record returned to the board for further testimony and for specific findings upon the question above stated.
 

 If there has been a permanent loss, as distinguished from an impairment, of function in any joint or joints of claimant’s fingers, he is entitled to an award, under paragraph (c) of Section 306, for the additional number of weeks specified in the paragraph — in other words, for the aggregate of the periods fixed therein for such permanent injuries as may be shown by the evidence:
 
 Sustar v. Penn Smokeless Coal Co.,
 
 supra. In that event, the extent of the disability resulting therefrom is entirely immaterial; compensation is to be paid for the number of weeks specified in the statute, regardless of the effect of these injuries upon his earning power, and even if they have had no effect.
 

 After the testimony now upon the record has been clarified and such additional testimony as the parties may see fit to offer has been taken, another possible aspect of the case may present itself for consideration by the compensation authorities. When an employee has sustained compensable injuries to a member enu
 
 *538
 
 merated in paragraph (c) it is frequently impossible to determine their extent and effect until the lapse of time has demonstrated whether the use of the member has been permanently lost, within the meaning of that paragraph, and the liability of the employer accordingly limited to the definite period therein prescribed, regardless of the extent of disability, or its use merely so impaired that the compensation is payable under paragraphs (a) or (b), depending upon the extent of the resulting disability. We have pointed out in several cases that when the injuries have not resulted in the removal of the member, the test by which it must be determined whether compensation is payable exclusively under paragraph (c) is not whether the injuries are
 
 confined
 
 to the member in question, but whether they have resolved themselves into such a permanent loss of its use as is practically equivalent to its removal. See
 
 Zellner v. Haddock Mining Co.,
 
 139 Pa. Superior Ct. 16, 10 A. 2d 918;
 
 Flood v. Logan Iron & Steel Co. et al.,
 
 145 Pa. Superior Ct. 206, 20 A. 2d 792, and cases there cited.
 

 As respects the case at bar, however, it is to be noted the legislature has directed that permanent loss of function of a proximal joint “shall be considered to be the loss of the use of the toe or finger” and therefore compensable under paragraph (c), and that permanent loss of the function of a distal joint shall be compensated under that paragraph for the period therein fixed. Hence, it will be necessary for the compensation authorities to make specific findings upon the issue whether claimant’s injuries have resolved themselves into the permanent loss of function of one or more joints of his fingers, other than the second. If they have, the award must be made for the aggregate of the definite periods fixed in paragraph (c), regardless of any question of disability; but if they have not, specific findings will become pertinent upon the question
 
 *539
 
 whether claimant suffered, beyond the forty-week period fixed for the amputation of his second finger, any partial disability, attributable to the accident and compensable under paragraph (b).
 

 There is no reason, however, why claimant should not be paid the $572, awarded April 24, 1939, for the loss of his second finger, with interest, if that award has not already been paid, and also the medical and hospital expenses specified therein. The employer did not appeal from the action of the referee in making that award, but it is included in the judgment from which she now appeals.
 

 Judgment affirmed as to that portion thereof which provides for payment of compensation for a period of forty weeks at the rate of $14.30 per week, with interest, and for payment of medical and hospital expenses; the remainder of the judgment, providing for payment of compensation for a period of three hundred and sixty weeks at the rate of $3.68 per week, with interest, is reversed and the record is remitted for further proceedings not inconsistent with this opinion.