### Roberts, Admrx., *v.* John Wanamaker, Philadelphia et al., Appellants.

Argued October 7, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Thomas E. Comber, Jr.,* with him *Pepper, Bodine, Stokes & Schoch,* for appellants.

*Glenn A. Troutman,* with him *Alexander F. Barbieri,* for appellee.

OPINION BY KENWORTHEY, J., January 28, 1943:

The petition in this workmen's compensation case sought to set aside a final receipt. There have been two appeals to the common pleas. The first was by claimant from an order dismissing the petition; on that appeal the court reversed and sent the case back "for further hearing and determination in accordance with this opinion." The second was by the employer from an order setting aside the receipt and awarding compensation on the basis of 25% disability; on that appeal the common pleas affirmed. The employer has appealed to this court.

Claimant[1] suffered a compensable injury to his knee on September 10, 1934. An open agreement was voluntarily executed under which compensation for total disability was paid until February 1, 1935, when claimant signed a final receipt. On March 16, 1935, he filed a petition to set aside this receipt, alleging that it had been executed in error, that after working four or six weeks his disability recurred and he needed further surgical care. Immediately after this petition was filed an arrangement was made to have the knee operated on by Dr. L. Kraer Ferguson; the operation was performed on March 18, 1935. Claimant returned to work on May 31st and after working three weeks, he quit on June 20th.

Claimant's counsel then negotiated an arrangement under which claimant would accept payment of compensation to May 25, 1935, and on July 5, 1935, a check was delivered by employer's insurance carrier to claimant's counsel and claimant executed a second final

---

[1] Claimant died in 1940 from causes in no way connected with the accident and his widow was substituted.

receipt. In addition, because the insurance company was fearful that a further attempt might be made to set aside this second receipt, it took the precaution of making certain that claimant's counsel explained to him fully the effect of the final receipt and procured from claimant an additional signed statement to that effect. These first proceedings were accordingly terminated.

On November 9, 1937, about two and a half years after it was executed, claimant filed a petition to set aside the second final receipt, alleging again that the receipt "was executed in error" and that he was disabled at the time he signed it.

Claimant's testimony assumed two aspects (1) he insisted that at the time he signed the receipt he did not know the effect it would have on his rights, that he assumed it was merely a receipt for the payment of money, and that he had not been informed by his counsel that it would end his right to compensation, and (2) that when he returned to work between May 31st and June 20, 1935, he had been unable to perform his duties properly because his knee would "give way" and that he was, therefore, disabled when he executed it.

The evidence overwhelmingly indicated that claimant deliberately lied about the circumstances under which the receipt was executed. The referee and the board, without hesitation, found as a fact that he had been fully informed of the effect of the receipt.

Dr. Ferguson did not undertake to say that he had at any time after the operation observed anything objectively wrong with the knee, but he did say that since claimant complained of the knee giving way he felt or believed there was a loose piece of cartilage in the knee. He was unable to say whether it was a dislocated semilunar cartilage or a piece of cartilage

similar to those he had removed and which had been overlooked at the operation.

The board found that the receipt "was not executed under any mistake either of law or fact, and no improper conduct has been shown on the part of defendant," and dismissed the petition.

The court, on the first appeal by claimant, was of opinion "that the full extent of his injuries were not known either to the defendant or to the deceased himself," that the evidence showed that when the receipt was signed there was a loose piece of cartilage in the defendant's knee which neither of the parties nor the physician were aware of. Recognizing its lack of power to make findings of fact, it sent the case back to the board with the direction that the board find them and with what amounted to a mandate as to how the board should find them.

The burden was on claimant to prove the existence of the undiscovered piece of cartilage *at the time the receipt was executed. Busi v. A. & S. Wilson Co.,* 110 Pa. Superior Ct. 95, 99, 167 A. 655. The alleged discovery of his disability occurred before the final receipt was executed. But it seems incredible that if the disability in fact existed claimant would not have reported it to his physician or to his lawyer before executing the receipt. And the statement of Dr. Ferguson that he "believed" that claimant had a loose piece of cartilage in his knee, even if this might be interpreted to mean that it was present at the time he signed the receipt,[2] was neither binding on the board nor of much

---

[2] This interpretation would be somewhat speculative in view of the doctor's testimony that he could not tell without opening the knee again whether the loose piece was a dislocated semilunar cartilage or a fragment he had overlooked at operation. If it was an overlooked fragment of course the inference would be that it was there when the receipt was signed; if it was a dislocated semilunar cartilage, the dislocation might easily have occurred after the receipt was signed.

help to it in determining the credibility of claimant's story. The only significance properly to be attributed to it, since the doctor was unable to observe for himself the presence of the cartilage, was that it showed an indulgent regard for the statements of his patient.

The credibility of this evidence was for the board, not for the court below. As President Judge KELLER pointed out in *Walsh v. Penn Anthracite Mining Co.,* 147 Pa. Superior Ct. 328, 24 A. (2d) 51: "Where the decision of the board is against the party having the burden of proof—in this case, the claimant—bearing in mind that a trier of fact is not *required* to accept even uncontradicted testimony as true (*District of Columbia's Appeal,* 343 Pa. 65, 79, 21 A. (2d) 883) the question before the court is whether the board's findings of fact are consistent with each other and with its conclusions of law and its order, and can be sustained without a capricious disregard of the competent evidence. Unless the answer is in the negative, the order must be affirmed."

And in passing upon the credibility of claimant's testimony, the board was entitled to take into consideration the fact that claimant had misrepresented the circumstances under which the receipt had been executed and that he waited nearly two and a half years before filing the petition to set it aside.

We recently pointed out that under our system the board must be left free to make its own findings of fact and the courts have no right to tell them how they should exercise that function. *Wellinger v. Brackenridge,* 149 Pa. Superior Ct. 394, at pp. 398 et seq. If defendant had appealed from the court's original order reversing the board, we would have reversed and entered judgment for defendant on the board's findings and dismissal. *Strickland v. Baugh & Sons Co.,* 139 Pa. Superior Ct. 273, 11 A. (2d) 547;

*Parisi v. Freedom Oil Co.,* 150 Pa. Superior Ct. 260, 27 A. (2d) 255.

On the return of the record, the board took no further testimony; it simply complied with what it regarded as the mandate of the court to set aside the receipt and make an award: "It would, therefore, appear to us that we have erred in not attaching credibility to this testimony, and under the opinion of the court, it establishes a mistake of fact. We, therefore, in conformity with the opinion of the court, set aside the thirteenth finding of fact, the first conclusion of law and order of dismissal."

The case now comes to us on an appeal from what purport to be findings in favor of claimant affirmed by the court. If there were sufficient evidence to support the findings, the only thing we could do would be to once more return the case to the board so that it might make its own findings freed from the coercive influence of the court below.

But we think the judgment must be reversed and entered for defendants for the reason that the evidence offered by claimant did not measure up to the standard of quality and quantity which the Supreme Court has indicated is required to support a petition to set aside a final receipt.

In *Eberst v. Sears, Roebuck Co.,* 334 Pa. 505, 6 A. (2d) 577, the Supreme Court, referring to *Shuler v. Midvalley Coal Company,* 296 Pa. 503, 146 A. 146, said: "We held that the evidence to overthrow a final receipt must be of a more definite and specific nature than that upon which initial compensation is based; the causation between the alleged disability and the accident must be established by more than simply the testimony of the employee and medical testimony based solely upon the employee's own history of the case." The present case falls squarely within the rule; the only evidence to support a finding that the receipt was

executed under a mistake was the statement of claimant that the disability existed when the receipt was signed and the opinion of the physician, *based wholly thereon,* that he believed there was a loose piece of cartilage in the knee. The doctor expressly said, "you have to depend entirely on the history."

The court below in its opinion discussed these authorities at some length; it concluded that since in all of them there was conflicting evidence offered by defendant, the present case is distinguishable. But the presence or absence of conflicting evidence never has any bearing on whether the party having it has, in law, met the burden of proof; such evidence is addressed solely to the fact-finding body. If in the Eberst case the evidence had, in law, been sufficient to meet the burden, it would have supported an award regardless of how much conflicting evidence was offered; and since it was held insufficient the absence of conflicting evidence here does not cure the deficiency.

The trouble with this case is that claimant has slept on his rights if he had any. There is some evidence which might have supported a finding that his disability had *recurred* within the meaning of the second paragraph of §413, 77 PS 772. The burden of proof then would have been less onerous. But a petition, to come under that section, must be filed within one year after the last payment of compensation and was, therefore, too late to be considered. *Bucher v. Kapp Bros.,* 110 Pa. Superior Ct. 65, 167 A. 652.

Judgment is reversed and entered for defendants.