## Carberry, Appellant, *v.* Reitz Furniture Company et al.

418

Argued April 12, 1943. Before KELLER, P. J., BALD-
RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and
RENO, JJ.

*John W. Conrad,* of *Conrad & Shannon,* for appellant.

*Matthew A. Crawford,* with him *Raymond E. Brown,*
for appellee.

Opinion by Baldrige, J., July 16, 1943:

This is a workmen's compensation case. Pearl Carberry was employed by the Reitz Furniture Company as a general handy man. On August 26, 1935, while in the course of his employment standing on an upper rung of a ladder, he fell a distance of fifteen feet striking his side on a pile of planks and then landed on a concrete floor. He sustained fractures of the first rib on his right side and the radius near the left wrist, lacerations on his head and chest, and bruises on both knees.

Under an agreement compensation for total disability was paid by the employer to March 31, 1937, when a supplemental agreement was entered into providing payments for partial disability, which remained in force until Carberry's death on October 3, 1938.

Catherine Carberry, the appellant herein, filed a petition alleging that her husband's death was due to the fall aforesaid and asked that she be granted compensation. Referee Beshlin heard the case originally and awarded compensation. The board reversed and remanded the record to Referee Smith. He, after hearing, when the only testimony taken was that of Dr. McKinley who attended the decedent during the month before his death, granted an award which was affirmed by the board. Exceptions filed thereto by the insurance carrier were sustained by the court and the record was remitted to the board for a further hearing and determination, "...... because facts were found without legal proof and evidence to sustain some of the facts was based on an erroneous belief as to the existence of a fact ......"

Another hearing before Referee Smith followed when testimony was taken relating mainly to whether the widow objected to an autopsy. No further medical testimony was offered. The referee after "considering the entire record including the Opinion of Judge Long"

made substantially the same finding as previously, except the ninth, wherein he stated that there was no causal connection between the accident on August 26, 1935, and Carberry's death and accordingly disallowed compensation.

The board, on an appeal that followed, stated: "In the opinion of Judge LONG, the facts found by the Referee at the hearing on May 28, 1940, and affirmed in an opinion by this Board on November 19, 1940, were not based upon competent evidence properly proven. We have no alternative but to accept the conclusion so reached." Accordingly it affirmed the referee's findings and conclusions. The court below sustained the board's action stating: "In the instant case the conclusions of the claimant's medical experts were either founded on unproven premises or they did not comply with the standards applicable to medical experts, as laid down in the Elonis case, supra." [*Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264, 3 A. 2d 995.] This appeal was then taken.

The testimony discloses that Carberry prior to this accident was in excellent physical condition; that he performed work regularly for seven days in the week and that after the accident he was able to do only light work at irregular intervals; that his health steadily declined without any other intervening cause until his death. Immediately after the accident Carberry's family physician, Dr. Shaffer, was called and he attended him from then up to and including November 28, 1935, the last time the doctor saw him professionally. During that period the patient did not improve and although he saw him frequently on the streets of Brookville thereafter, his physical condition was "decidedly on the decline." On February 25, 1936, Carberry entered the Mercy Hospital in Pittsburgh and remained there under the care of Dr. Wallace until May 12, when he was discharged. In November 1937, when he was

suffering pain, his health growing worse, and a lump had appeared on his side over the appendix, he entered the Brookville Hospital for a period of about twelve days and then returned home. The lump disappeared, but according to his wife's testimony his general physical condition did not improve and he went to bed and remained there for a number of weeks. In the latter part of July 1938 he was taken to the Dubois Hospital where he remained for about a month under the care of Dr. Lewis. From September 6, 1938, until his death on October 3, 1938, he was at home attended by Dr. A. C. McKinley.

The first medical witness called was Dr. Lewis. He testified that when he first saw Carberry he found his skin had a yellowish tinge, he was very much emaciated, his gall bladder was not functioning, and he was suffering pain in the right shoulder and abdomen. A further, but not a complete, examination disclosed that he had a hard mass or growth in the pelvis on the right side, which from a "temporary diagnosis" he thought was carcinoma extending down in his right side, probably due to "metastasis" which is a spreading to other parts of the body. He stated that he could not make a more extensive examination as Carberry's physical condition was rapidly growing worse at that time. He was asked to state, from his knowledge of Carberry's condition acquired from an examination and study and assuming the facts as proven connected with the fall and Carberry's good physical condition previous thereto and his impaired health thereafter, whether the accidental fall was the cause of death. His answer was: "I would feel that way, yes." That was equivalent to saying "I believe" and met the legal standard of proof: *Euker v. Welsbach St. Lighting Co.*, 149 Pa. Superior Ct. 78, 83, 25 A. 2d 758. The appellees argue that Dr. Lewis' answer was based on the false assumption that the decedent was never able to go back to work. It clearly

appears when all of Dr. Lewis' testimony is taken into consideration his opinion was based on the decedent's inability to do his *normal* work for a period of six months or a year.

Dr. Shaffer, who was present when Dr. Lewis was testifying and was asked to state, based upon his examination and treatment of Carberry, his frequent observation of him on the streets thereafter, together with salient facts which had been developed in the testimony of other witnesses, whether in his opinion Carberry died as a result of the injuries he sustained on August 26, 1935. He replied that in his opinion his death resulted from the accident. Both Dr. Lewis' and Dr. Shaffer's testimony on causal connection was sufficiently positive and definite, and complied with the standard announced in *Elonis v. Lytle Coal Co.*, supra, followed in later cases, including *Monahan v. Seeds and Durham et al.*, 336 Pa. 67, 71, 6 A. 2d 889, and *Euker v. Welsbach St. Lighting Co.*, supra.

At a later hearing Dr. McKinley was called and he testified that when he first saw the patient in September 1938, he was in great distress with distension of the abdomen, difficulty in breathing, etc. "My diagnosis was a malignancy of some of the viscus of the abdomen—in other words, a growth, a malignant growth." He signed the death certificate where he gave the cause of death as "probable malignancy of the viscus of the abdomen." Dr. Shaffer was recalled and reaffirmed the opinion he had expressed previously.

We concede, of course, that the question of sufficiency of competent evidence is one of law for the court's determination (*Minner v. Reno et al.*, 138 Pa. Superior Ct. 37, 9 A. 2d 909) but we are not in accord with the views expressed by the learned court below that the competent evidence was insufficient to support an award. A careful study of the hypothetical questions put to the medical witnesses, which the appellee con-

tends were based on unproven premises or hearsay testimony, convinces us that they are not justly subject to that criticism. The facts included in the questions were properly proven. In our view the reasonable inferences drawn from the facts produced supported the findings of the board, which had the "right to use the conclusions and tests of ordinary everyday experience and draw the inferences which reasonable men would thus draw from similar facts:" *Nesbit v. Vandervort & Curry et al.*, 128 Pa. Superior Ct. 58, 62, 193 A. 393. See, also, *McLaughlin v. Penn Anthracite Mining Co.*, 117 Pa. Superior Ct. 196, 177 A. 502, and *Kempa v. Pittsburgh Terminal Coal Corp.*, 133 Pa. Superior Ct. 392, 3 A. 2d 34. The cause of death is not required to be established to a medical certainty nor is an autopsy an absolute essential in cases of an accidental death: *Hunter v. St. Mary's Natural Gas Co. et al.*, 122 Pa. Superior Ct. 300, 307, 186 A. 325. We have frequently emphasized that the responsibility of determining facts where there is competent evidence, either direct or circumstantial, to support the findings and conclusions rests with the referee and the board. When that duty has been discharged according to the law the courts may not interfere. They cannot tell the compensation authorities that they must find one way or another: *Icenhour v. Freedom Oil Works Company et al.*, 136 Pa. Superior Ct. 318, 7 A. 2d 152: *Roberts Admrx. v. John Wanamaker, Philadelphia et al.*, 151 Pa. Superior Ct. 297, 30 A. 2d 189.

In *Rosenberger v. Mar-Bern Coal Co.*, 151 Pa. Superior Ct. 373, 384, 30 A. 2d 153, the court of common pleas erroneously held the medical testimony on the question of causal connection insufficient and apparently influenced a new board when the case came up again, to change its findings and refuse an award. President Judge KELLER stated: "Had the board which passed on the second appeal been the same as that

which dismissed the first appeal, we would have no hesitation in reversing the judgment of the court below, which affirmed the order of disallowance of the board, and directing the entry of judgment on the award; for in such case, we would be sure that the sudden reversal of the board in its findings of fact would have been due to its feeling that it was obliged to follow the erroneous ruling of the court on the first appeal."

The judgment of the court below is reversed and the record directed to be remanded so that judgment may be entered by the court in accordance with the award of the board granted October 15, 1940.