## Niemi *v.* Asplundh Tree Expert Co. et al., Appellants

Argued March 14, 1944. Before KELLER, P. J., BALD-RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*Robert P. F. Maxwell,* for appellants.

*Frank R. Ambler,* for appellee.

OPINION BY KENWORTHEY, J., April 11, 1944:

The employer and insurance carrier appeal from the judgment entered on a workmen's compensation award. The questions are whether the evidence is sufficient to support the award of 55% partial disability in addition to compensation for the specific loss of two fingers and, if so, whether the findings of the board are sufficiently specific.

On August 20, 1941, appellee accidentally came in contact, in the course of his employment, with an electric wire, causing burns of his left hand and other parts of his body. The parties entered into an open agreement under the terms of which he was paid compensation for total disability at the rate of $16.77 per week. The agreement specifically contemplated that it would be subsequently modified, either by a supplement or an award for "specific permanent disability of hand and/or fingers." And, on November 20, 1941, the parties apparently being unable to agree, appellants filed a petition to terminate the agreement.

Appellants have conceded throughout that appellee is

entitled to an award for total disability for 65 weeks, being the aggregate period for the loss of the index and middle fingers of the left hand which were amputated. Appellee concedes that, with the exception of the left hand, all the injuries had cleared up prior to the expiration of the 65 week period and that an award for additional compensation must be founded on disability persisting as a result of injuries to the hand not related to the specific loss of the two fingers. It was to determine the question whether there was additional disability that the hearing before Referee Sheldrake was held.

The only witnesses were a physician called by appellants, and the appellee himself. The physician said that when he examined appellee, shortly before the hearing, "there was full active flexion and extension of the three remaining fingers of the left hand both forceful flexion and extension," and that "the remaining disability he had was confined to the left hand due to the specific loss ...... of the [two fingers]."

Appellee made no denial of these statements; all he said was that he had been unable to resume his work because "I don't have the power in my hand when I was doing the job."

There was an additional question and answer which, in our opinion, deserves no consideration whatever although Chairman Murphy of the board and appellee's counsel attribute considerable importance to it. Following a very brief cross-examination by counsel, the referee asked the physician: "The burns of the left hand required amputation of the left index and middle fingers and *the whole hand was also injured,* doctor?" to which the answer was, "yes." (Italics added). It is plain nonsense to argue that the doctor meant that the whole hand was *still disabled* at the time he made his examination. In the light of his explicit statements to the contrary, when the testimony is read as a whole, it

simply meant that the whole hand was originally injured but that at the time of his examination the other injuries had cleared up and the remaining disability was due entirely to the loss of the two amputated fingers.

Chairman Murphy, in his opinion, said: "The record fairly indicates that the Referee had an opportunity to inspect the claimant's left hand and the fifth finding of fact, to the effect that claimant has a disability to the ring and little finger of the left hand, is apparently based on the inspection made and claimant's testimony." But, certainly, an *opportunity* to inspect is of no significance. And the assertion that the referee's finding was "apparently based on the inspection" is pure speculation; the referee did not say so, and there is nothing in the record to show what his inspection, if he made one, revealed. See *Heinold v. Pittsburgh Brass Mfg. Co.*, 132 Pa. Superior Ct. 400, 200 A. 947. Since he made no finding of damage to the palm of the hand or thumb, the sole question involved the loss of function in the little and ring fingers, if any. The doctor said there was none and appellee, although he appeared as a witness, made no specific denial. The only "inspection" of any value would have been a test. There is no indication any was made. It was error to give weight to any such assumption.

Obviously, if the burden of proof were on appellee, the evidence would not support an award of 55% or any other partial disability from injuries not related to the loss of the two fingers. However, appellee insists that the burden of proof was on appellants (*Matchouski v. Pittsburgh Terminal Coal Corp.*, 146 Pa. Superior Ct. 201, 22 A. (2d) 114), that the fact-finding tribunal had a right to disregard the testimony of appellants' doctor (*Schrock v. Stonycreek Coal Co.*, 152 Pa. Superior Ct. 599, 601, 33 A. (2d) 522), and that, since the findings were against the party having the burden

of proof, the only question before the court "is whether the board's findings of fact are consistent with each other and with its conclusions of law and its order, and can be sustained without a capricious disregard of the competent evidence." *Walsh v. Penn Anthracite Mining Co.,* 147 Pa. Superior Ct. 328, 333, 24 A. (2d) 51. These are sound legal principles when applied to the proper case. But the trouble is Chairman Murphy did not disregard the doctor's testimony; as indicated by his opinion, he regarded it and gave wholly unwarranted weight to a small portion of it, i. e. that "the whole hand was also injured." This was an error of law. *Serafini v. West End Coal Co.,* 131 Pa. Superior Ct. 476, 480, 481, 200 A. 245; see also *Fisher v. Sweet & McClain,* 154 Pa. Superior Ct. 216, 223, 35 A. (2d) 756. When the case is returned for a reconsideration of the findings, to which we shall now address our attention, the evidence should also be reconsidered in the light of what we have just said about it, although we assert no power to direct the board in its ultimate determination of the facts. See *Roberts v. John Wanamaker,* 151 Pa. Superior Ct. 297, 302, 30 A. (2d) 189.

Chairman Murphy, realizing that the referee's findings were not sufficiently specific, attempted (in our opinion, without much success) to revise them to meet the test laid down in *Bauman v. Spokas,* 146 Pa. Superior Ct. 530, 539, 23 A. (2d) 211. The crucial findings are Nos. 5 and 6. They are printed in full in the margin.[1] He finds a persisting disability of the ring

---

[1] "5. That the claimant has a disability to the ring and little fingers of the left hand, which has not resulted in the industrial loss of the use of the ring and little fingers of the left hand, but which, together with the injury suffered to his hand, to wit, a loss of gripping power, has resulted in partial disability.

"6. We find as a fact, from the credible evidence in the record, that the claimant has suffered a 55% partial disability by reason of the injuries sustained to the ring finger, little finger and the gripping power of the left hand."

and little fingers which, *together with the injury suffered to his hand, to wit, a loss of gripping power,* has resulted in a partial disability of 55%. The error here is plain. The loss of gripping power of the hand cannot be added to a partial loss of function of the remaining fingers to determine the extent of compensable disability. The amputation of the two principal fingers inexorably was responsible for a very substantial loss of gripping power. Whatever loss of such gripping power was caused by the amputation has been compensated for in the award for 65 weeks under §306(c). *Lente v. Luci,* 275 Pa. 217, 119 A. 132; *Priorello v. State Workmen's Ins. Fund et al.,* 133 Pa. Superior Ct. 373, 2 A. (2d) 864. The questions are: (1) How much, if any, remaining damage to the little and ring fingers is there; (2) how much, if any, loss of gripping power *in those fingers* is there; and (3) what percentage of appellee's earning power has been destroyed solely as a result of such loss? And, in rationalizing the last question to a conclusion, it should be assumed that the two main fingers are still present and retain their full strength. In no other way can the loss of earning power not related to the amputated fingers be logically determined. And when the test is thus applied it is obvious that nothing like a loss of 55% will be found. Appellee has had an unfortunate accident with a serious permanent injury to his hand. It may be that compensation for 65 weeks is pretty meager. But, if that be so, the way to correct it is by an amendment to the law, not by stretching the facts of a particular case to accomplish what the board may think is a more just result.

Shortly after the board made its order affirming the referee, appellants filed a petition for rehearing on the sole ground appellee had, five days after the original hearing, been examined, accepted and inducted into the Army. Nothing more was alleged except "that the evidence is essential." What conclusion was the board sup-

posed to draw from this "essential" fact? Certainly not that appellee had *no* physical disability. And if the Army would accept a man with a hand from which two fingers had been amputated, the board could not be asked to take judicial notice of the fact the Army might not also accept him with some additional impairment of the function of the remaining fingers. The petition was properly refused.

Finally, the court entered judgment for three separate items: (1) $569.45 for the loss of index finger at $16.27 per week for a period of 35 weeks from September 6, 1941 to May 3, 1942; (2) $488.10 for the loss of the second or middle finger at $16.27 per week for a period of 30 weeks from September 6, 1941 to March 29, 1942; and (3) $2,585 for partial disability at $8.95 per week from September 6, 1941 to June 7, 1947. Interest at the rate of 6% was ordered to be paid on all installments to date of payment. Appellee concedes that this overlapping method of calculation was wrong; that the two periods of payments under §306(c) should run tandem-fashion. *Bauman v. Spokas,* supra at 537. And, if there is ultimately an award under §306(b), the employer will be entitled to credit for the 65 weeks during which payment will have been made under §306(c). *Barlock v. Orient Coal & Coke Co.,* 319 Pa. 119, 178 A. 840.

The record is returned to the lower court with direction to reduce the judgment to the amount of the combined sums due for the loss of the index and middle fingers with interest, and thereafter, to, return the record to the workmen's compensation authorities for further proceedings in accordance with this opinion.