# Hilton v. Edwards Memorial Church

*Roger J. Dever*, for claimant.

*William A. Skinner*, for defendant.

VALENTINE, P. J., May 19, 1944.—This case strikingly illustrates the complications, difficulties, and delays that not infrequently arise as a result of the creation of an administrative body and the vesting of it with power and authority to decide questions and perform duties properly resting with the judicial branch of the State Government, or which should be heard and determined by a tribunal whose members are familiar with legal principles and procedure.

Claimant seeks compensation for injuries allegedly sustained by slipping on the stairs of defendant church while in the performance of his duties as caretaker. The accident occurred January 12, 1936.

Two weeks after the accident claimant consulted Dr. Davenport, who found a lump in the rectum. Claimant entered a hospital on January 30, 1936. His ailment was diagnosed as osteoarthritis of the pelvis. He was discharged from the hospital on February 27, 1936. The claim petition was filed January 11, 1937.

On hearing of the claim petition on March 24, 1937, claimant testified: "I was looking after the steam and

I was going down and I happened to make a mis-step and fell down the steps and bumped my back". Strangely enough, on being admitted to the hospital claimant made no reference to his fall. While he was in the hospital X-rays were taken and his trouble diagnosed as follows: "hypertrophic arthritis of the lumbar spine, and of both hip joints, decidedly more marked on the right side". At the hearing claimant did not offer Dr. Davenport as a witness. The fact that Dr. Davenport was not called would warrant the inference that his testimony would have been unfavorable to claimant's contention: Green v. Brooks, 215 Pa. 492, 496; Marshall v. Pittsburgh, 119 Pa. Superior Ct. 189, 197.

Dr. Cavanaugh, then a practicing physician for the period of three years, called as a witness for claimant, testified that he first saw claimant in May 1936, and said:

"A. The diagnosis is arthritis, hypertrophic arthritis of the spine, and of both hip joints.

Q. You heard him testify here today, doctor, did you?

A. I did.

. .   •   •   •   •   •   •   •   •   •

"Q. If he is telling the truth, doctor, concerning this fall, what, if anything, did that fall do to his condition?

A. Why, if there had been trouble in the spine before and he had this fall, it could have aggravated the condition, that condition present, but from what he has told me I didn't get any history of having any trouble there before."

On cross-examination the witness said:

"Q. Now, if he had this arthritis before this fall, are you able to tell what condition his arthritis would have been in now had he had no fall?

A. No.

Q. If he had it before this fall and it aggravated it, can you tell how long the condition due to the aggravation would exist?

A. No, the only thing I know is that from his history he has been getting a little better since the injury.

. . . . . . . . . .

"Doctor, in this case, this man you say is disabled as the result of the arthritis; is that right?

A. Yes, the arthritic condition being aggravated by the fall, at present has caused this man to be disabled.

. . . . . . . . . .

"Q. Can you tell us how much of that is due to the natural progress of that arthritis and how much of it is due to the aggravation?

A. No, there is nobody can tell you that.

Q. Nobody can tell you that?

A. No.

. . . . . . . . . .

"Q. And you are unable to tell how much of that is due to natural progress of the disease, and how much is due to the aggravation?

A. Yes."

On the part of defendant, Dr. Davenport, Dr. P. H. O'Connell, and Dr. H. A. Smith (a specialist in orthopedic surgery whose outstanding ability is well known throughout Pennsylvania), who had made an examination of claimant, testified claimant suffered from prostate gland trouble and arthritis and that his disability was in no way related to the accident. The referee (Conniff) determined that claimant's condition was not due to the alleged accident and dismissed the petition August 23, 1937. On an appeal to the board, that tribunal on May 5, 1939 (almost two years later), reversed the referee and found that the accident aggravated a preëxisting condition and made an award for total disability from February 2, 1936. In making this award the board apparently overlooked or ignored the

testimony of claimant's own witness and physician, Dr. Cavanaugh, given at the hearing held March 24, 1937, that claimant "could do janitor work". An appeal to this court was sustained and the record remitted to the board for "a specific finding of fact as to the extent to which claimant is disabled as the result of the accident as distinguished from any disability attributable to the natural progress of the disease from which he was suffering at the time of the happening of the accident". This order was made August 1, 1939.

On December 22, 1939, the board set aside all prior findings of fact, conclusions of law, and order of disallowance and remanded the record to Referee Olexy for further hearing and determination in accordance with the opinion of the court. The hearing before the referee was held January 27, 1941. At this hearing claimant testified, inter alia:

"Q. Your wife has the arrangement with the church for the janitor work, hasn't she?

A. Yes.

Q. And she has had for a good many years?

A. 20 years.

Q. And the church pays her?

A. Pays her."

Dr. Cavanaugh, again called as a witness, testified:

"Q. You testified on a former occasion in this case, did you, doctor?

A. Yes, sir.

Q. Have you seen and examined the claimant since that?

A. I did.

Q. What is his condition now as compared with what it was at the former hearing?

A. It is improved.

. . . . . . . . . .

"Q. What in your opinion did this accident do to this man?

A. I think it caused the disability.

Q. In what way?

A. Trauma to a preëxisting condition, aggravated it.

Q. Whether or not it was the aggravation that disabled him in your opinion?

A. It is the main thing, trauma I mean caused the disability.

Q. The question I put to you was whether or not in your opinion it was the aggravation that disabled him?

A. Yes."

He also said on cross-examination:

"A. He has improved now. I think the trauma had stirred the thing up, aggravated the condition, and he is about 20 percent better, 10 to 20 percent than he was. That is not the stand I take today on that because the man has much improved and is much better today.

. . . . . . . . . .

"Q. How much of the present disability, if there is any existing, is due to the normal progress of the arthritis, and how much is due to the alleged aggravation of that arthritis by this fall in January 1936?

A. I couldn't state definitely.

. . . . . . . . . .

"A. The time element enters into this. If it was a progressive thing due to the arthritis itself, this thing would have been progressed more, and it would have continued to progress, but this is clearing up.

. . . . . . . . . .

"Q. I have asked what is the matter with him today?

A. He has got an arthritis.

Q. And that arthritis existed before this accident?

A. According to his history, on the chart.

Q. And you claim that this accident could have aggravated that condition and made it worse?

A. It did aggravate it and made it worse.

.    .    .    .    .    .    .    .    .    .

"Q. Answer the question, whether or not this accident caused the arthritis or aggravated a preëxisting condition?

A. Trauma can give you arthritis.

Q. Did it in this case?

A. You will have to have another X-ray taken. To me, if it was my patient, a patient of mine, I would have another X-ray taken, because you can have traumatic arthritis on top of a hypertrophic arthritis.

Q. Will you answer my question whether or not in your opinion this accident caused the arthritis or aggravated a preëxisting condition?

A. It aggravated a preëxisting condition.

.    .    .    .    .    .    .    .    .    .

"Q. If he slipped or fell on steps and bumped his buttocks that in itself wouldn't disable a man for five years, would it?

A. Yes, it could cause traumatic arthritis.

Q. Cause it?

A. Yes, positively.

Q. Is that what happened in this case?

A. Well, I think in this case here the arthritis was aggravated by the trauma.

Q. How much of his disability is due to this accident and how much of it is due to the arthritis?

A. *The disability that this man had was due to trauma.*"

Were we vested with authority to make our own findings on the basis of the testimony in the record we would unhesitatingly adopt the testimony of the three physicians who testified on behalf of defendant as being correct, but our power is limited to determining whether there is sufficient competent evidence to justify the finding of the board: Carberry v. Reitz Furniture Co. et al., 152 Pa. Superior Ct. 417.

Dr. Cavanaugh's testimony (although seriously contradicted by other outstanding experts) is unequivocal. He gave as his final conclusion that claimant's disability resulted from the accident. He based his opinion upon the fact that claimant's condition had improved, and that if his disability had resulted from the progressive character of the disease his present condition would be worse than it was at the time of or immediately after the accident. No expert testimony controverting this position was adduced. Notwithstanding Dr. Cavanaugh's previous contradictory testimony, his credibility was for the compensation authorities and not for the court. See Beck v. Franklin Glass Corp. et al., 136 Pa. Superior Ct. 204.

Under the order of this court made August 1, 1939, the compensation authorities were limited to taking evidence on, and the determination of, the specific question of fact set forth in the order of remittance. The subsequent order setting aside "all prior findings" was improper. The board was without authority to hear the case de novo: Costello v. Schumacher, 114 Pa. Superior Ct. 296, 299; Serafini v. West End Coal Co., 131 Pa. Superior Ct. 476, 487.

After the taking of additional testimony, the referee (Olexy) on March 6, 1941, filed a report finding that as a result of the accident claimant became totally disabled. From this report defendant appealed on April 3, 1941. Thereafter, the case rested until January 28, 1944 (almost three years), when the order of the board awarding compensation for total disability was filed.

After the appeal had been taken in 1941, the duty rested upon the board of fixing a time and place for the hearing of the same. The Compensation Act makes it the duty of the board to do this and "serve notice thereof on all parties in interest": 77 PS §855. The board was required to afford defendant the opportunity of filing exceptions to the new or additional findings (and to dispose of the same if filed) before sending

the record to the court of common pleas: Costello v. Schumacher, supra; Driscoll v. McAlister Brothers, Inc., 294 Pa. 169, 174. These requirements were entirely ignored. In addition to these procedural errors, we are of the opinion that the award made by the board cannot be sustained. If it be conceded that claimant suffered total disability as a result of the accident, the record is devoid of evidence indicating that such condition continued beyond March 1937.

In March 1937, Dr. Cavanaugh testified that claimant was "getting better since the injury" and that "he could do janitor work but was not able to go back to the mines". At the hearing held in January 1941, claimant testified that he was feeling a lot better than he did at the time of the first hearing in 1937. At this time Dr. Cavanaugh also testified that "the man has much improved and is much better today". Irrespective of claimant's condition at the time of the making of the original award, the evidence formed no foundation for an award on the basis of total disability on January 22, 1944, when the board entered the award complained of. In the absence of evidence warranting such action, the award could not be made for a period beyond the date of the hearing before the referee. See McGee v. Youghiogheny & Ohio Coal Co., 121 Pa. Superior Ct. 85, 94; Strait v. Gulf Oil Co. et al., 140 Pa. Superior Ct. 464, 468. The last hearing before the referee was March 6, 1941. The award for total disability was made January 28, 1944.

At the original hearing on March 24, 1937, claimant testified:

"Q. By whom were you employed on January 12, 1936?

'A. By the trustees.

Q. Of what?

A. Of the Congregational Church.

Q. What church?

A. Edwardsville."

His testimony given at the hearing on January 27, 1941, was to the effect that the arrangement for the doing of the janitor work was with his wife and that she was paid therefor. He also said they were both employed to do the work, his testimony in this connection being as follows:

"Q. Your wife has the arrangement with the church for the janitor work, hasn't she?

A. Yes.

Q. And she has had for a good many years?

A. Twenty years.

Q. And the church pays her?

A. Pays her."

He later said:

"A. We was hired as a pair.

Q. What is that?

A. Hired as a pair. When we was first hired in the church and the trustees booked the wages to my wife, Mr. Williams said we was hired as a good pair; Mr. Hilton could do the outside work and Mrs. Hilton could do the in.

Q. How long has it been since the church paid your wife for being janitress?

A. Twenty years.

Q. They hired your wife as janitress and you helped her?

A. We both went in together; hired us as one. That is as plain as I can say it."

If claimant was defendant's employe, his case falls within the provisions of The Workmen's Compensation Act. If claimant's wife was employed by defendant and claimant at the time of his fall was assisting her in the performance of her duties as janitress, he was not defendant's employe and is not entitled to compensation. The term "employe" used in The Workmen's Compensation Act means a person employed for a

"valuable consideration": Harris et al. v. Seiavitch, 336 Pa. 294. By reason of the testimony of claimant given at the hearing of January 27, 1941, defendant's insurance carrier at the time of taking the appeal petitioned the board (April 3, 1941) praying for a "review and rehearing of the entire proceedings to the end that proper findings may be made on the question of employment and the jurisdiction of the board". The board refused this petition and affirmed the award. This was done without the filing of an answer by claimant and without any argument by defendant. We think that the record shows the status of claimant to be in such a state of uncertainty that the petition should have been granted. At the original hearing claimant testified he received a monthly wage of $55 which was paid to him "as janitor". At the later hearing he said he was never paid any money but that for 20 years the janitor's wages had been paid to his wife. Another portion of his testimony indicated the employment of both himself and wife. Even if a joint employment of claimant and his wife were proven, he would not be entitled to compensation on the basis of earnings of $55 per month. The board almost three years after the filing of the petition determined that the petition was "without merit". We think the petition averred sufficient facts to warrant the taking of additional testimony. The administration of The Workmen's Compensation Act is not "litigation" in the strict sense: Gairt v. Curry Coal Mining Co. et al., 272 Pa. 494, 498; and justice to the parties required favorable consideration of the petition: Fedak v. Dzialdowski, 101 Pa. Superior Ct. 346.

We are, therefore, constrained to the conclusion that, notwithstanding the period of time (over eight years) intervening since the happening of the accident, the record must again be remitted to the board. If meritorious cases are delayed as this one has been, the

beneficent purpose of The Workmen's Compensation Act would be defeated.

We conclude: (1) The finding of the board that claimant's disability resulted from the accident can be sustained; (2) the board should receive evidence on the question of claimant's employment and make a specific finding covering this phase of the case; (3) the board should receive additional evidence as to the character of claimant's disability, whether total or partial, and make a definite finding as to the type and extent of the disability and the period during which the same continued to exist.

Now, May 19, 1944, the appeal is sustained, the action of the board is reversed, and the record is remitted to the board for further hearing and determination: Tomlinson v. Hazle Brook Coal Co., 116 Pa. Superior Ct. 128.