## Parks v. Winkler, Appellant.

Submitted June 14, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*John F. Naulty,* for appellant.

*Joseph A. McNeal,* for appellee.

OPINION BY FLOOD, J., September 13, 1962:

In this workmen's compensation death case, the referee and the board both found for the claimant and the court below dismissed the defendant's appeal and affirmed the decision of the board. The appellant contends that (1) there was insufficient evidence to establish the causal connection between the accident and the death and (2) the employer's liability was terminated by a final receipt executed by the claimant's decedent during his lifetime and never set aside.

1. For the reasons set forth in the following quotation from the opinion of Judge CHUDOFF of the court below, we find no merit in the appellant's first contention:

"Decedent was employed as a truck driver stockman for defendant on October 31, 1957, when in the course of his employment he was struck by another truck, sustaining an injury to his back.

"The testimony taken before the referee established that decedent was a normal, healthy adult prior to the accident, with a fine work record. His widow testified that after the accident he could not sit up for long periods of time and he walked stiffly. After the stiffness became worse he consulted Dr. Walter R. Johnson.

"The history given to Dr. Johnson by the decedent attributed the injury to the accident of October 31, 1957. Dr. Johnson was consulted approximately fifteen months after the accident and the diagnosis rendered was a herniated disc between lumbar vertebrae 4 and 5. When Dr. Johnson could not, by simple therapy, afford any relief or cure to the decedent he suggested hospitalization.

"Dr. Jerome Ira Cook, an orthopedic specialist, testified he examined the decedent in March or April 1959, at Jefferson Medical Hospital, where, after receiving the same history of the decedent's injury, he diagnosed the claimant as suffering from a herniated degenerated nucleus pulposus at the L-4 and L-5 interspaces. After a period of unresponsive conservative treatment surgery was recommended. Subsequent to the surgical operation the decedent was placed in a body spica for spinal fusion. The death that ensued on April 19, 1959, was attributed to a pulmonary infarction due to phlebothrombosis, all as a direct result of the accidental injury on October 31, 1957.

"Defendant offered no testimony to dispute the above conclusions. He based his entire defense on the lack of causation between the accidental injury and the death which occurred approximately 18 months after the initial injury was sustained.

"When asked whether it was unusual for this period (18 months) of time to elapse between an accident and the type of surgery recommended, Dr. Cook said, 'Not at all. This is a very common situation'; and this question was propounded: 'Would the degenerating condition be consistent with an 18-month old injury?' Dr. Cook's answer was, 'Yes, sir.' He then further testified as follows: 'Q. Doctor, in your professional opinion, did the accident described to you by Mr. Parks cause the injury from which you found him suffering? A. Yes, sir.

Q. Doctor, did the injury from which you found him suffering necessitate the operation which you performed? A. Yes. Q. Doctor, did the operation which you performed necessitate this period of immobilization? A. Yes, sir. . . . Q. Doctor, *in your professional opinion, did the immobilization necessitated by the operation cause the embolism which resulted in Mr. Parks' death?* A. *I think it was a definite contributory factor.* Q. In your professional opinion, doctor, would the patient have died if he had not been immobilized? A. In our opinion, if we consider it postoperatively necessitating it, no, he would not.' . . .

"Treating this case as one which requires medical testimony to establish the causal connection between the accident and the death, we agree with the defendant that a medical witness must testify that it is his professional opinion that the result in question did come from the assigned cause. A less direct expression of opinion does not constitute legally competent evidence: Washko v. Ruckno, Inc., 180 Pa. Superior Ct. 606, 609, 121 A. 2d 456.

"We find that Dr. Cook's testimony was sufficient, however, to meet the above mentioned test.

"The cause of death is not required to be established to be a medical certainty, nor is an autopsy an absolute essential in cases of accidental death: Hunter v. St. Mary's Natural Gas Co., 122 Pa. Superior Ct. 300, 307, 186 Atl. 325; Carberry v. Reitz Furniture Co., 152 Pa. Superior Ct. 417, 423 (1943).

"The conclusions of Dr. Cook are based upon a chain of circumstances in logical sequence, pointing to a causal connection between accidental injury and death. His conclusions are 'strengthened by actually what happened'. Jones v. Phila. & Reading C. & I. Co., 285 Pa. 317, 132 Atl. 122; Williams v. Jones & Laughlin Steel Corp., 155 Pa. Superior Ct. 435, 439 (1944). The proofs resting on the testimony of this medical wit-

ness meet the standard of Elonis v. Lytle Coal Co., 134 Pa. Superior Ct. 264, 3 A. 2d 995.

"Our Superior Court has frequently emphasized that the responsibility of determining the facts where there is competent evidence, either direct or circumstantial, to support the findings and conclusions, rests with the referee and the board. When that duty has been discharged, according to the law the courts may not interfere. They cannot tell the compensation authorities that they must find one way or the other. Icenhour v. Freedom Oil Works Co., 136 Pa. Superior Ct. 318, 7 A. 2d 152; Roberts, Admrx. v. John Wanamaker, Phila., 151 Pa. Superior Ct. 297, 30 A. 2d 189.

"From a fair reading of all the testimony it is our conclusion that the doctor testified it was his professional opinion that the decedent's death was caused by the injury to his back. This evidence was sufficient to justify the findings of the compensation authorities: Mosser v. Mt. Union Borough, 158 Pa. Superior Ct. 277, 279, 44 A. 2d 762."

In this court the defendant relies upon *Rich v. Philadelphia Abattoir Co.,* 160 Pa. Superior Ct. 200, 50 A. 2d 534 (1947). In that case, however, the claimant failed to establish by competent evidence two essential links in the chain of causation, including the immediate cause of decedent's death.

2. It was not necessary for the widow to set aside the final receipt given by the decedent as a prerequisite to the establishment of her claim for his death. Hers is an independent, not a derivative, claim and is not conditioned upon a right in the employe at the time of his death. *Rossi v. Hillman Coal and Coke Co.,* 145 Pa. Superior Ct. 108, 20 A. 2d 879 (1941). Neither a failure of the decedent to petition for or receive compensation for the injury during the statutory period following the accident, nor a failure by him to move to set aside a final receipt, bars his widow's right, if

she files her claim within the statutory period after his death. *Smith v. Primrose Tapestry Co.*, 285 Pa. 145, 131 A. 703 (1926); *Rossi v. Hillman Coal and Coke Co.*, supra.

Order affirmed.